In re Donald M. MARTIN, Debtor.

Von G. MEMORY, Trustee, Plaintiff,

v.

ALFA MUTUAL FIRE INSURANCE COMPANY, Defendant.

Bankruptcy No. 92–00343–AP–RRS–7.

United States Bankruptcy Court, M.D. Alabama.

Oct. 1, 1993.

Von G. Memory, Trustee, pro se.

Floyd R. Gilliland, Jr. of Law firm of Von G. Memory, of counsel, Montgomery, AL, for Trustee.

J. Patrick Darby and John P. Whittington of Bradley, Arant, Rose & White, Birmingham, AL, for defendant Alfa Mutual Fire Insurance Company.

*OPINION ON COMPLAINT TO RECOVER A PREFERENCE STATEMENT OF THE CASE*

RODNEY R. STEELE, Chief Judge.

Donald M. Martin filed a Chapter 11 on January 5, 1990. The case converted to Chapter 7 on December 10, 1990. Von G. Memory was appointed Trustee in the Chapter 7 case on December 11, 1990.

C & C Land Corporation was filed as an involuntary Chapter 7 on April 11, 1990, was converted to Chapter 11 on May 31, 1990, and was thereafter converted back to a Chapter 7 on December 11, 1990, and Mr. Memory was appointed as trustee. C & C Land Corporation was wholly owned by Donald M. Martin.

The trustee of Don Martin, debtor, filed the complaint herein to recover a preference against this defendant on December 10, 1992. He alleges that a payment of $105,062.49 in money, paid to defendant within 90 days of the debtor's filing of Chapter 11, was an avoidable preferential transfer under Title 11 U.S.C. § 547.

The defendant joins issue, and asserts affirmative defenses under 11 U.S.C. § 547(c)(1) and (c)(4). Defendant further says that C & C Land Corporation and Don Martin, this debtor, were alter egos, and in that connection, they assert that new value was given to the debtor through C & C Land at the time the alleged preferential transfer occurred, making a preference, if any, non-avoidable.

Trustee later amended his complaint to claim, in addition to the preferential transfer, that the transfer was fraudulent under 11 U.S.C. § 548(a). The defendant then moved to dismiss the § 548 claim as being filed too late, and further defended on the grounds that the defendant gave value to the debtor/plaintiff under § 548(d)(2).

At the hearing on June 18, 1993, the court granted the defendant's motion to amend its answer, but denied its motion to dismiss the amended complaint. The remaining issues were submitted to the court on memoranda and the evidence.

### JURISDICTION

The court has jurisdiction under to 28 U.S.C. § 1334, and 28 U.S.C. § 157(b)(2)(F) and (H). This is a core proceeding within the meaning of the latter statute.

### FACTS

On March 9, 1988, and April 6, 1988, C & C Land Corporation ("C & C"), entered into a contract to purchase from Alfa Mutual Fire Insurance Company ("Alfa"), 50 residential building lots located in the Dannelly Pines Subdivision in Montgomery, Alabama.

On April 6, 1988, C & C paid a cash amount toward the purchase price and executed a promissory note to Alfa for the balance. The promissory note was for $242,500, due and payable in full 15 months from the date of execution. C & C also executed a mortgage on the real property to Alfa to secure the indebtedness under the note.

Both the mortgage and the promissory note were signed by the debtor, Don Martin, as Chairman of the Board of C & C Land Corporation. Don Martin also signed both the mortgage and the promissory note as a guarantor of those instruments.

Over the following 15 months, C & C marketed and sold lots in the Dannelly Pines Subdivision. As specified in the note C & C remitted $6,000 to Alfa for each lot sold and upon receipt of the funds, Alfa released that lot to C & C and reduced the indebtedness on the promissory note.

By the end of the 15-month term of the note, C & C had failed to pay the note in full. After July 6, 1989, and up until the balance was paid in full on November 3, 1989, C & C worked under extensions granted by Alfa. Alfa required that a specific money amount be paid to extend the final pay-off date. In an August 3, 1989, letter addressed to Don Martin, President of Martin Realty and Construction Company, Alfa confirmed an agreement for an extension which was accepted by Don Martin under his signature as President. A check to fulfill the extension agreement was issued from the Union Bank and Trust account of Martin Realty and Construction Company.

Finally on November 3, 1989, a check was issued from the Union Bank and Trust account of Martin Realty and Construction Company to Alfa in the amount of $105,062.49. This check represented the payment in full of the 1988 promissory note. Upon receipt of this check, Alfa executed and delivered a Corporate Cancellation and Release of the mortgage to C & C Land Corporation.

It is this November 3, 1989, check which trustee for Don Martin seeks to recover as a preferential transfer and a fraudulent transfer.

### CONCLUSIONS

■ I. Trustee's claim under 11 U.S.C. § 548 is that the November 3, 1989, payment of $105,062.49 is a fraudulent conveyance because debtor did not get reasonably equiva-

lent value in exchange: the value went to C & C in the satisfaction of its debt and the release of its mortgage.

But defendant effectively defends under § 548(d)(2)(A). Debtor was a contingent creditor by virtue of his guaranty, who received reasonably equivalent value in the satisfaction of an antecedent debt of the debtor. *See In re Cavalier Homes of Georgia, Inc.,* 102 B.R. 878 at 885–886, (U.S.B.C.M.D.Ga., 1989).

Plaintiff cannot recover under 11 U.S.C. § 548.

■ II. Trustee's claim under 11 U.S.C. § 547 is that the November 3, 1989, payment of $105,062.49 is a preferential transfer because it was a transfer to or for the benefit of a creditor for or on account of an antecedent debt owed by the debtor before the transfer was made, while the debtor was insolvent, made within 90 days before bankruptcy, and which gave Alfa more than it would have gotten in a Chapter 7 if the transfer had not been made. 11 U.S.C. § 547(b).

(A) Defendant says trustee has not proved the elements of a preference.

1. We find that there was a transfer of the debtor's property to Alfa when the November 3, 1989 check was delivered and honored. Debtor was a contingent debtor to Alfa. Title 11 U.S.C. § 101(5) and (10).

2. The payment was for or on account of an antecedent debt owed by the debtor before the transfer was made. (Payment on November 3, 1989, paid a debt incurred on April 6, 1988.)

3. The debtor was insolvent when the transfer occurred on November 3, 1989. The presumption of insolvency raised by § 547(f) was not contradicted by any evidence from defendant. Trustee bolstered the presumption with testimony that debtor was insolvent in the Spring of 1989 and thereafter until he filed his Chapter 11 petition on January 5, 1990. R. 49–50, and Cf. R. 23–26.

4. The payment was made on November 3, 1989, within 90 days of the order for relief on January 5, 1990.

5. We find that the transfer enabled Alfa to receive more than it would receive if the case were a case under Chapter 7 (which it is). We assume that the transfer was not made, and that Alfa would have received a distribution in the Chapter 7 case.

Trustee testified without contradiction, that the distribution in this Chapter 7 case will not exceed ten cents on the dollar. (R. 23–25).

Defendant vigorously joins on this point, asserting that there can be no preference because:

A. C & C Land was the alter ego of Debtor Don Martin: Alfa says they were not kept separate by Don Martin, the debtor, who held all the stock of C & C, and were dealt with indiscriminately by creditors. Since Alfa was secured by its mortgage from C & C, it was therefore secured by Debtor Don Martin, and in a Chapter 7 would have been paid in full in any event on its oversecured claim.

Alter ego, or "piercing the corporate veil" is a useful equitable principle under state law, which comes into play when the proponent can "... show fraud in asserting the corporate existence or must show that recognition of the corporate existence will result in injustice or inequitable consequences...." Quoted with approval in *Backus v. Watson,* 619 So.2d 1342, (Ala.1993), from *Simmons v. Clark Equipment Credit Corp.,* 554 So.2d 398, 400–401 (Ala.1989).

■ It is a power not lightly to be exercised. Sole stock ownership will not justify its use, nor one-man corporations, nor under capitalization. There must be the added elements of misuse of control and harm or loss resulting from it. *Simmons, infra.* It is particularly inapplicable where superior federal statutory law is clear, as it is here. Cf. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, at 205–07, 108 S.Ct. 963 at 968–69, 99 L.Ed.2d 169 at 179 (1988); *In re Sublett,* 895 F.2d 1381 at 1385 (11th Cir.1990).

Defendant adduced no such misuse or harm in the transactions giving rise to this adversary proceeding. There is no evidence here that C & C was set up as a subterfuge or that the legal requirements of corporate law were not complied with, or that the

corporation maintained no corporate records, or that the corporation had no employees, or that corporate and personal funds were intermingled and corporate funds were used for personal purposes, or that debtor here drained funds from the corporation. *Simmons, supra.* There is no evidence here concerning the attitude or treatment of other creditors in dealings with Martin or C & C.

There is evidence that Don Martin was the owner and chief executive of C & C, and that he operated C & C as a part of his business holdings, which included other corporations. These businesses operated out of the same address with the same telephone number and employed some of the same people, but the debtor and C & C had separate bank accounts and separate tax returns and EID numbers. (R. 70, 57.) There is evidence that Richard Piel, an attorney hired by debtor Martin to prepare documents of title, thought the several corporations were all one business (R. p. 74). But he knew nothing about the finances of these businesses (R.p. 77), and knew only that Mr. Martin considered all the businesses to be his own: "... in his mind, it was all the same, I believe." (R. p. 77, et seq.) He knew that C & C operated as a valid corporation. (R. 92) but he knew nothing about the business affairs of these businesses. (R. 99–100)

These facts cannot support a conclusion that C & C was the alter ego of Debtor Don Martin.

Debtor and C & C had and have now a different make-up of creditors. There are many common creditors, but their claims are in different capacities and in different amounts, as trustees' several applications for classification of claims have borne out. In the transaction attacked here, Alfa recognized the different entities when it sought and obtained Don Martin's separate guaranty. It further recognizes the separate entity in its successful attack in this case on trustee's claim under § 548.

Debtor Martin and C & C ostensibly had different functions, although they were often blurred. Debtor was in real estate sales and construction (R. 22). C & C held land for sale and resale and development, as was the case in this transaction. The maintenance of proper chains of title among Martin's several business entities was often disregarded, but not in this case.

The conclusion finally must be that there is not sufficient evidence to invoke alter ego as a defense to the claim of preferential transfer, particularly as to the element of § 547(b)(5). If Alfa had foreclosed on its security against C & C Land as it insists it had a right to do as mortgagee, there would have been no payment of $105,062.49 from the assets of this debtor, and no preference. That is not what happened here.

■ (b) Alfa further argues that even if the alter ego equity is not available to it, there can be no preference where the benefits of a release of the mortgage to C & C flow through that corporation and benefit debtor Don Martin indirectly, as the sole stockholder of C & C Land. Therefore, Don Martin, debtor, did receive a co-equivalent benefit when the transfer occurred and the mortgage was released. So, says Alfa, the estate was not depleted under § 547.

This principle has been recognized. *Rubin v. Manufacturers Hanover Trust Co.,* 661 F.2d 979 at 991, (2d Cir.1981) (fraudulent conveyance case); and *In re Chase and Sanborn Corp.,* 848 F.2d 1196 at 1199 n. 7, (11th Cir.1988). But these and other cases make clear that the indirect benefit must be one realized or realizable by the creditors of the debtor who suffered the apparent avoidable transfer.

> ... [T]he court must keep the equitable purposes of the statute firmly in mind, recognizing that any significant disparity between the value received and the obligation assumed by either issuer will have significantly harmed the innocent creditors of that firm.... *Rubin, supra,* at p. 994.

Creditors of a debtor are also the focus of *In re Chase and Sanborn Corp.,* 904 F.2d 588 (11th Cir.1990), where the court, in agreement with the Fifth Circuit, held that the debtor's estate was depleted by the transfer *"to the detriment of the unsecured creditors,"* and that "new value" cannot include such rights as subrogation, reimbursement, indemnification, and contribution, because a debtor's preferential payment of actual mon-

etary value to a creditor under a guarantee agreement, in return for nothing more than the pre-existing right to assert a claim for (e.g.) reimbursement against the party whose debt was guaranteed depletes the tangible assets of the estate *"to the detriment of the other creditors."* [1]

There must be some real, measurable economic value to the creditors of debtor before "new value" comes into play as a flow through benefit to debtor. Where C & C Land was also insolvent as here, there can be no benefit to the creditors of this debtor simply because Don Martin owned 100 percent of the stock of C & C Land.

B. Alfa raises the affirmative defenses of §§ 547(c)(1) and 547(c)(2).

1. Under § 547(c)(1), trustee cannot recover a preferential transfer to the extent it was intended by debtor and the preferred creditor to be a contemporaneous exchange for new value given to the debtor and was, in fact, a substantially contemporaneous exchange.

For the reasons set out above, it must be concluded that this defense is not available to Alfa. The new value must be "given to the debtor." Indirect benefits must be of measurable economic benefit to the creditors of the debtor who made the preferential transfer. *See In re Chase & Sanborn,* 904 F.2d 588, which discusses new value in the context of § 547(c)(1). Alter ego is not available in this case. See the conclusion at II(A)(5) above.

2. Under § 547(c)(4) trustee cannot recover a preferential transfer to or for the benefit of a creditor to the extent that after such transfer, such creditor gave new value to or for the benefit of the debtor not secured by an otherwise unavoidable security interest and on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

For the reasons set out above, it must be concluded that this defense is not available to Alfa. While the language of Sections 547(c)(4) and 547(a)(2) appear to apply to the transaction sought to be avoided here, the history of this section and the cases decided under it favor an interpretation limited to new unsecured credit given after the voidable transfer which actually restores the depletion of the estate resulting from that transfer. Cf. *In re Jet Florida System, Inc.,* 841 F.2d 1082 (11th Cir.1988). It was designed to give credit against the transfer when new value was extended to debtor directly.

But assuming that some indirect benefit was contemplated by this section, the conclusion reached above must hold under this subsection also. There is no measurable economic benefit available to the creditors of debtor because of the release of the mortgage lien to C & C Land. *See In re Chase and Sanborn,* 904 F.2d 588 at 595–597.

Alter ego principles for the reasons set out above, Part II(A)(5), are not available to Alfa.

---

**1.** This language is quoted because it makes clear that it is creditors of the debtor who must be benefitted by any indirect "new value" under 547(a)(2). The fact situation in *Chase and Sanborn,* 904 F.2d 588 differs in some respects from those in this case, and the holding there relates to "new value" under the exception of § 547(c)(1).