Mary S. Backus sued Carousel Club 90, Inc. ("the club"), seeking to recover damages under Ala. Code 1975, § 6-5-71 (the Dram Shop Act), for injuries she had sustained on or about July 24, 1988, in an automobile accident involving a patron of the club. After obtaining a substantial judgment against the club on September 27, 1990, Backus filed the present action on January 11, 1991, against the club; Jimmy H. Watson, the former owner of the club; and his wife, Syble L. Watson, seeking to set aside an alleged fraudulent transfer of the club's assets and to hold the Watsons personally liable for her judgment against the club. Backus alleged that the Watsons had used the club as their alter ego and she urged the trial court to disregard the corporate form. The trial court entered a *Page 1343 
summary judgment for Syble Watson, and the propriety of that judgment is not an issue on this appeal. Jimmy Watson raised the statute of limitations and the doctrine of res judicata as affirmative defenses. The trial court, after conducting anore tenus hearing, entered a judgment setting aside the transfer of the club's assets, but denying Backus's request to hold Jimmy Watson personally liable for the judgment against the club. Backus appealed from this latter aspect of the judgment. We affirm.
Watson contends that either the two-year statute of limitations set out in Ala. Code 1975, § 6-2-38,[1] or the doctrine of res judicata provides a basis for affirming the judgment. Backus contends that the doctrine of res judicata was not a defense to her action; she makes no argument concerning the statute of limitations.
Initially, we note that the trial court did not clearly state its reason or reasons for entering the judgment for Watson. The trial court did separate its judgment into several parts, including a part entitled "Statement of Facts"; a part entitled "Findings of Fact and Conclusions of Law," in which the court expressed its opinion that Backus should have named Watson as a defendant in her action against the club; and a part entitled "Judgment," in which the trial court simply stated that "Watson [was] not personally liable for the judgment in the dram shop action." The trial court never specifically referred to the doctrine of res judicata; it mentioned the statute of limitations only to show that it had been raised as an affirmative defense. Based on our review of the record, it appears as though the trial court may have based its judgment either on the statute of limitations, on the doctrine of res judicata, or on a finding, based on ore tenus evidence, that Watson did not operate the club as his alter ego.[2]
With regard to the statute of limitations, Watson argues that "[a] claim of alter-ego liability for the torts of the corporation must be brought within the limitations period governing the filing of claims against the corporation for its tortious conduct." Therefore, Watson appears to take the position that the two-year statute of limitations set out in § 6-2-38(n) (pertaining to "[a]ll actions commenced to recover damages for injury to the person or property of another wherein a principal or master is sought to be held liable for the act or conduct of his agent, servant or employee under the doctrine of respondeat superior") controls. However, the record shows that Backus sought to hold Watson personally liable for her judgment against the club. She did not allege, nor attempt to prove, that Watson had breached a duty owed to her personally or that Watson was liable for any reason other than his alleged failure to observe the club's corporate identity. Therefore, in our view, § 6-2-38(n) is not applicable. Instead, we conclude that Backus's action is in the nature of a creditor's bill to enforce a judgment, see R.E. Pilkerton Electric, Inc. v.Westinghouse Electric Supply Co., 444 So.2d 855 (Ala. 1984); 21 Am.Jur.2d Creditors' Bills § 2 (1981), and, therefore, that it is subject to the 20-year statute of limitations set out in Ala. Code 1975, § 6-2-32.
We note Watson's reliance on Ex parte Empire Gas Corp.,559 So.2d 1072 (Ala. 1990), in support of his argument that a two-year statute of limitations applies. In that case, a parent corporation petitioned for a writ of mandamus directing the trial court to vacate its order amending the plaintiffs' complaint so as to add the parent corporation as a party defendant, in an action that had been filed against the parent *Page 1344 
corporation's wholly owned subsidiary in a malicious prosecution action, and on which a judgment had been entered against the subsidiary. We quote from the opinion:
 "The [plaintiffs] do not wish to commence a new action against [the parent corporation] to relitigate any issues that have already been litigated. The issues [liability as to the subsidiary] have already been decided in their favor. What [the plaintiffs] are seeking is the opportunity to amend their complaint in the original action so as to have an opportunity to present additional evidence necessary to justify piercing the corporate veil and holding [the parent corporation] liable, as sole shareholder, for the debts of its subsidiary.
 "[The parent corporation's] second contention is that the trial court erred in allowing the complaint to be amended to name [it] as a defendant because, it argues, the statute of limitations had run before the amendment to the complaint was filed. The conduct complained of occurred more than five years prior to the filing of the amendment, and it is true that if the amendment did not relate back to the filing of the original complaint, it would be barred by the statute of limitations. Under the facts of this case, however, we hold that the amendment did relate back to the filing of the original complaint, and, therefore, that it was timely filed."
559 So.2d at 1074. (Emphasis added.)
However, because the amendment to the plaintiffs' complaint in Empire Gas Corp. related back to the filing of the original complaint, the language emphasized above is dictum and, as such, should not be construed as a definitive statement with respect to the statute of limitations. Empire Gas Corp. is not authority for the proposition that the two-year statute of limitations set out in § 6-2-38(n) controls in this case.
Therefore, because Backus filed her action against Watson within 20 years of obtaining her judgment against the club, the judgment for Watson cannot be affirmed on the basis of the statute of limitations.
As to Watson's reliance on the doctrine of res judicata, we note that this Court held in Whisman v. Alabama Power Co.,512 So.2d 78, 80-81 (Ala. 1987), that "[a] valid, final judgment on the merits of an issue extinguishes that issue and operates as an absolute bar in a subsequent suit between the same parties on any issue which was or could have been litigated." Elaborating on this doctrine, Justice Merrill, writing for this Court in McGruder v. B L Construction Co., 331 So.2d 257, 259
(Ala. 1976), stated:
 "The doctrine of res judicata rests upon the primary principle that matters once adjudicated are settled and determined. Irwin v. Alabama Fuel Iron Co., 215 Ala. 328, 110 So. 566 [1925]; Suggs v. Alabama Power Co., 271 Ala. 168, 123 So.2d 4
[1960]. Those cases are also authority for the rule that to sustain a plea of res judicata or judgment by estoppel, the parties must be the same, the subject matter the same, the point must be directly in question, and the judgment must be rendered on that point.
 ". . . We note that our cases also state that a judgment in a former action between the same parties is not only conclusive of the questions actually litigated, but [also is conclusive as to any questions] which could have been litigated in the former suit. Reid v. Singer Sewing Machine Co., 218 Ala. 498, 119 So. 229 [1928]; Hathcock v. Mitchell, 277 Ala. 586, 173 So.2d 576 [1965]."
The record indicates that it was not until she took Watson's post-judgment deposition in an attempt to discover whether the club had any assets from which she could satisfy her judgment against the club, that Backus suspected that Watson might have ignored the club's corporate existence. For this reason, Backus says, she did not name Watson as a defendant in her action against the club and attempt at that time to obtain a judgment against him personally. Backus's present action against Watson was based on a cause of action entirely *Page 1345 
different from the one on which her action against the club was based, and in the present action she sought to litigate an issue that was not litigated, and could not have been litigated, under the pleadings in her action against the club, even though Watson appeared at the trial of that action and apparently participated in the club's defense. See Lesley v.City of Montgomery, 485 So.2d 1088 (Ala. 1986); see, also,Denniston Co. v. Jackson, 468 So.2d 170 (Ala.Civ.App. 1985). The litigation of the central issue presented in this action — whether the club was operated as Watson's alter ego and, therefore, whether the "corporate veil" should be pierced — has not been foreclosed by a previous judgment binding as between these parties. Therefore, the trial court could not have properly relied on the doctrine of res judicata as a basis for its judgment.
Finally, we note our well-settled standard for reviewing a judgment based on ore tenus evidence:
 "Under the ore tenus rule, a trial court's judgment, 'where supported by the evidence, is presumed correct and should be reversed only if the judgment is found to be plainly and palpably wrong, after a consideration of all the evidence and after drawing all inferences that can logically be drawn from the evidence.' "
Thomas v. Neal, 600 So.2d 1000, 1001 (Ala. 1992), quotingSundance Marina, Inc. v. Reach, 567 So.2d 1322, 1324-25 (Ala. 1990).
Also well established are the factors to be considered when determining whether to "pierce the corporate veil":
 "Piercing the corporate veil is not a power that is lightly exercised. The concept that a corporation is a legal entity existing separate and apart from its shareholders is well settled in this state. Co-Ex Plastics, Inc. v. AlaPak, Inc., 536 So.2d 37 (Ala. 1988). Alorna Coat Corp. v. Behr, 408 So.2d 496 (Ala. 1981). The mere fact that a party owns all or a majority of the stock of a corporation does not, of itself, destroy the separate corporate identity. Messick v. Moring, 514 So.2d 892 (Ala. 1987); Forester Jerue, Inc. v. Daniels, 409 So.2d 830 (Ala. 1982). The fact that a corporation is under-capitalized is not alone sufficient to establish personal liability. Co-Ex Plastics, Inc. v. AlaPak, Inc., supra; East End Memorial Association v. Egerman, 514 So.2d 38 (Ala. 1987). To pierce the corporate veil, a plaintiff must show fraud in asserting the corporate existence or must show that recognition of the corporate existence will result in injustice or inequitable consequences. Washburn v. Rabun, 487 So.2d 1361 (Ala. 1986); Cohen v. Williams, 294 Ala. 417, 318 So.2d 279 (1975).
". . . .
 ". . . Where the law recognizes one-man corporations, it is obvious that the law accepts the fact of domination by one person. See Ala. Code 1975, §§ 10-2A-90, 10-2A-58, 10-2A-57; Co-Ex Plastics, Inc. v. AlaPak, Inc., supra. Therefore, mere domination cannot be enough for piercing the corporate veil. There must be the added elements of misuse of control and harm or loss resulting from it. Messick v. Moring, supra; Washburn v. Rabun, supra.
 "The corporate veil may be pierced where a corporation is set up as a subterfuge, where shareholders do not observe the corporate form, where the legal requirements of corporate law are not complied with, where the corporation maintains no corporate records, where the corporation maintains no corporate bank account, where the corporation has no employees, where corporate and personal funds are intermingled and corporate funds are used for personal purposes, or where an individual drains funds from the corporation. See, e.g., Forester Jerue, Inc. v. Daniels, supra; Hamrick v. First National Bank of Stevenson, [518 So.2d 1242 (Ala. 1987)]; Deupree v. Ruffino, 505 So.2d 1218 (Ala. 1987); Messick v. Moring, supra; East End Memorial Association v. Egerman, supra."
Simmons v. Clark Equipment Credit Corp., 554 So.2d 398, 400-01
(Ala. 1989).
The evidence in the present case, which was conflicting, does show that Watson did *Page 1346 
not always observe the corporate form. This is illustrated by the trial court's findings of fact:
 "Club 90, Inc., was incorporated under the laws of the State of Alabama on January 8, 1964. The [defendant] Watson [was] not among the original incorporators. [Watson] testified that he acquired the club in 1968.
 "The food permit was issued in the name of the club, as was the ABC license and the business license. Before the judgment, invoices by suppliers were addressed to High Chaparal [the name the club operated under for a period of time].
 "The electric bill was paid by Jimmy Watson and the services of the waste hauling company were billed to the Carousel Club [another name the club operated under for a period of time].
 "In plaintiff's exhibit 3, there were minutes of 10 annual meetings, each bearing the signatures of [Watson and his wife, Syble,] as officers of the corporation.
 "Jimmy Watson managed the daily operations of the club. He withheld nothing from the earnings of the employees, who were paid in cash. [Watson and his wife] filed a joint tax return in 1989 and in Schedule C declared the business as a club located at 4173 Halls Mill Road, Mobile, Al, and operated as a sole proprietorship.
 "There are no corporate financial records. All transactions with suppliers or employees were paid in cash by [Watson] from the cash receipts of the club.
 "The corporation was a social club holding a license from the State of Alabama, ABC Board. Jimmy Watson stated that from time to time concerns of the club were discussed with the members present but no minutes of these discussions were kept.
 "[Watson was] in Mobile County before the complaint was filed in the dram shop case. The corporation has not been legally dissolved. Jimmy Watson was present during the trial of the dram shop case and [he] responded to pre-trial discovery in that litigation as an officer of the corporation."
In addition to these facts, the evidence also shows that the club paid no franchise taxes and filed no corporate income tax returns. The evidence further shows that Syble Watson was not an officer of the club. Watson signed his wife's name to the minutes of various club meetings and falsely represented on liquor license renewal applications that she was an officer of the club. On the other hand, there was evidence that Watson did not operate the club as a subterfuge. Although Watson testified that the club kept no formal books or records and that he preferred to handle all of the club's transactions in cash, he did state that there was a corporate bank account. In addition, the club had several employees who were paid out of funds generated by the club. Watson paid himself a salary out of the club's funds. There was also evidence that Watson did not drain funds from the corporation for his personal use. Furthermore, Watson explained that he had only a sixth-grade education and that his "bookkeeper" had prepared his individual income tax return, wherein the club was referred to as a "sole proprietorship." Finally, the various food permits and licenses were issued in the club's name. Suffice it to say that although the evidence shows that Watson dominated the club and that, as the trial court specifically noted, he failed to observe certain corporate formalities, we cannot say that a finding by the trial court that the club was not operated as Watson's alter ego would have been plainly and palpably wrong. We will assume that the trial court found those facts necessary to support its judgment, if such a finding would be supported by the evidence. Robinson v. Hamilton, 496 So.2d 8 (Ala. 1986). We recognize that this is a close case and that we would have affirmed a judgment for Backus based on a finding that Watson had operated the club as his alter ego. However, because we are governed by our ore tenus standard of review, we, as an appellate court, are required to give great deference to the trial court's finding of fact on this issue. *Page 1347 
Because the trial court could have found from the evidence that Watson did not operate the club as his alter ego, the judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.
[1] Because § 6-2-39, providing a one-year limitations period, was repealed by Ala. Acts 1984-85, No. 85-39, p. 40, § 3, effective January 9, 1985, we assume that Watson's specific reference in his brief to that section was an oversight.
[2] The parties suggest that the trial court did not make a finding with respect to the alter ego issue. The record, however, indicates that the trial court may have made such a finding from the evidence. If, in fact, the trial court did not reach this issue, but relied, instead, on either the statute of limitations or the doctrine of res judicata, then that fact may be shown by supplementing the record on an application for rehearing.