MAXWELL, J.,
 

 for the Court:
 

 ¶ 1. The question we must decide is under what circumstances a creditor may circumvent the legal fiction of limited liability and hold LLC members and/or a separate commonly owned LLC responsible for the LLC’s debt. We find the three-prong test for piercing the veil of corporations, established in
 
 Gray v. Edgewater Landing, Inc.,
 
 541 So.2d 1044, 1047 (Miss.1989), is also the appropriate test for piercing the veil of LLCs. And because Hotel and Restaurant Supply, Inc. (HRS) failed to establish all three prongs were indisputably met, we find the circuit court erred by granting HRS summary judgment in its action to pierce the veil of Restaurant of Jackson LLC (Restaurant of Jackson) and SouthEastern Restaurant LLC (SouthEastern) and hold LLC members Jim Schafer and Courtney Brick, along with sister LLC, Restaurant of Hattiesburg LLC (Restaurant of Hattiesburg), liable for Restaurant of Jackson and SouthEastern’s debt to HRS.
 

 ¶ 2. Because we find nothing procedurally impermissible with HRS’s action, we affirm the denial of Restaurant of Hatties-burg, Schafer, and Brick’s motion for summary judgment, which raised procedural issues only. We reverse the grant of sum
 
 *36
 
 mary judgment in HRS’s favor and remand this case to the circuit court for further proceedings consistent with this opinion.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 3. In 2005, Schafer and Brick opened multiple restaurants operating as Copeland’s franchises, based on A1 Copeland’s original restaurant in New Orleans. Schafer and Brick formed three separate LLCs: (1) Restaurant of Hattiesburg to operate a Copeland’s in Hattiesburg, (2) Restaurant of Jackson to operate a Copeland’s in Jackson, and (3) SouthEastern to manage the accounting and payroll of both restaurants. Restaurant of Jackson was unsuccessful. It closed the Jackson Copeland’s in the spring of 2006, owing HRS $29,000 plus thousands in service charges. Some time later, Restaurant of Hatties-burg ceased operating a Copeland’s franchise and re-opened under a different name.
 

 I. HRS’s First Suit
 

 ¶ 4. In fall 2005, an HRS sales representative contacted the managers of the Jackson Copeland’s. During the initial sales call, a manager allegedly told the sales rep the Jackson Copeland’s was associated with the Hattiesburg Copeland’s. But the sales rep. did not meet with Schafer or Brick, and he later testified he did not even know who Schafer and Brick were until HRS tried to collect past-due payments. The sales rep. also testified, while HRS may have already had an account with the Hattiesburg Copeland’s, he opened a new, separate account, first titled “Copeland’s Franchise” and then later “Restaurant of Jackson, LLC.”
 

 ¶ 5. From September 2005 to March 2006, HRS delivered, restaurant supplies to the Jackson Copeland’s. SouthEastern paid HRS on behalf of Restaurant of Jackson. But the payments stopped when the Jackson Copeland’s closed.
 

 ¶ 6. In September 2006, HRS sued Restaurant of Jackson, SouthEastern, and “John Does 1 though 10.” In October 2007, the Lamar County Circuit Court granted HRS summary judgment based on the undisputed purchase orders. The circuit court found Restaurant of Jackson and SouthEastern jointly liable to HRS for the $36,816.64 debt.
 

 II. HRS’s Post-judgment Debt-collection Efforts
 

 ¶ 7. To collect the debt, HRS obtained a writ of garnishment on SouthEastern’s bank account — only to discover the account contained $36 and change, with no additional income flowing into the account. HRS initiated post-judgment discovery, available to judgment creditors through Mississippi Code Annotated section 13 — 1— 261 (Rev.2002).
 

 ¶ 8. HRS propounded interrogatories, which went unanswered. It then filed a motion to compel, which the circuit court granted and ordered the judgment debtors pay $750 to HRS for the costs of filing the motion. Finally, HRS scheduled a judgment-debtor exam, requesting specific financial records be brought to the. exam.
 
 See
 
 Miss.Code Ann. § 13-1-265 (Rev.2002) (authorizing judgment-debtor exam and production of documents). On September 11, 2008, Brick appeared on behalf of Restaurant of Jackson and SouthEastern but did not bring any financial documents.
 

 ¶ 9. Brick testified SouthEastern managed the accounting and payroll for both Restaurant of Jackson and Restaurant of Hattiesburg. Both companies deposited their incomes in SouthEastern’s single bank account. SouthEastern kept track of the separate incomes and expenses of both
 
 *37
 
 restaurants. SouthEastern also paid both restaurants’ payroll and bills. But records show that in 2006 SouthEastern claimed the income from both companies on its tax returns.
 

 ¶ 10. After the Jackson Copeland’s closed, Restaurant of Hattiesburg continued to deposit its proceeds from the Hat-tiesburg Copeland’s, which varied from $160,000 to $260,000 per month, into SouthEastern’s bank account. But in December 2007 — around the same time the circuit court denied SouthEastern’s motion to reconsider the judgment against it— Restaurant of Hattiesburg opened its own bank account. HRS believed the timing of the opening of this new account was highly suspect. But Brick claimed, because there were no longer multiple restaurants to operate, SouthEastern’s consolidated services were not needed.
 

 ¶ 11. Bank records show SouthEastern had issued Brick a $9,000 check in November 2007. Brick testified this was a repayment of a loan to Restaurant of Hatties-burg. SouthEastern had also written Schafer’s realty company an $800 cheek, which Brick claimed was for reimbursement for printing restaurant menus.
 

 ¶ 12. After Brick’s deposition, HRS moved to reopen its lawsuit against Restaurant of Jackson and SouthEastern to add Restaurant of Hattiesburg, Schafer, and Brick as parties. The circuit court denied the motion because the judgment in that case was final.
 

 III. HRS’s Second Suit
 

 ¶ 18. In November 2008, HRS sued Restaurant of Hattiesburg, Schafer, and Brick. HRS requested the court “pierce the veil” of SouthEastern and Restaurant of Jackson and hold the three new defendants jointly and severally liable for the judgment debt.
 

 ¶ 14. In January 2010, HRS moved for summary judgment, arguing Restaurant of Jackson and SouthEastern did not observe corporate formalities and commingled assets. HRS relied on Brick’s failure to produce sufficient financial documents at the judgment-debtor exam and failure to comply with post-judgment discovery. HRS also highlighted Brick’s inability to specifically account for the $9,000 payment by SouthEastern to himself and the $800 payment to Schafer’s company.
 

 ¶ 15. Restaurant of Hattiesburg, Schafer, and Brick responded that HRS’s allegations and evidence failed to meet the three-prong test for corporate-veil piercing under
 
 Gray v. Edgewater Landing, Inc.,
 
 541 So.2d 1044, 1047 (Miss.1989). They specifically claimed HRS could not show the first prong, frustration of contractual expectations, because HRS “knew from the outset that it was dealing with a corporate entity” and “chose not to pursue a personal guarantee or collateralization for its credit.” They filed their own motion for summary judgment, arguing HRS was violating procedural rules by retrying the same claim against different parties. They also argued HRS’s action was barred by the three-year statute of limitations for breach of contract.
 

 ¶ 16. After a hearing in October 2010, the circuit court denied Restaurant of Hat-tiesburg, Schafer, and Brick’s motion for summary judgment but granted summary judgment in favor of HRS. The circuit court found the three prongs of
 
 Gray
 
 had been met. And it held that Restaurant of Hattiesburg, Schafer, and Brick were jointly and severally liable for:
 

 (1) the $750 granted for reasonable expenses for compelling post-judgment discovery in the first suit,
 

 (2) the $86,816.64 judgment against Restaurant Jackson and SouthEastern,
 

 
 *38
 
 (3) $8,500 in attorney’s fees, plus
 

 (4) eight percent interest from the date of the judgment in the first suit.
 

 Restaurant of Hattiesburg, Schafer, and Brick timely appealed.
 

 STANDARD OF REVIEW
 

 ¶ 17. Mississippi Civil Procedure Rule 56 directs a trial court to render judgment “forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). We review a grant of summary judgment de novo, applying the same standard as the circuit court.
 
 Harrison v. Chandler-Sampson Ins., Inc.,
 
 891 So.2d 224, 228 (¶ 11) (Miss.2005). We view the evidence in the light most favorable to the party against whom the motion has been made.
 
 Id.
 
 If any triable issues of fact exist, we must reverse.
 
 Id.
 
 As the comment to Rule 56(c) advises, “summary judgment is not a substitute for the trial of disputed fact issues.” M.R.C.P. 56 cmt. The purpose of summary judgment is to determine whether a triable issue exists but not to resolve that issue.
 
 Id.
 

 DISCUSSION
 

 I. Was Summary Judgment Properly Granted to HRS?
 

 ¶ 18. We first address why factual disputes concerning HRS’s claim require we reverse the grant of summary judgment in its favor. According to Rule 56, the circuit court could only grant HRS summary judgment if (1) there were no material disputed factual issues and (2) those undisputed facts showed HRS was entitled to judgment as a matter of law. M.R.C.P. 56(c). Our de novo review reveals not only disputed facts but also insufficient proof HRS was entitled to judgment as a matter of law. In particular, we find HRS did not indisputably demonstrate its contractual expectations were frustrated because it had looked to Restaurant of Hattiesburg, Schafer, and Brick for performance of the UCC sales contract.
 

 A. Piercing the Veil of an LLC
 

 ¶ 19. Before we discuss why HRS is not entitled to summary judgment under the three-prong test from
 
 Gray,
 
 we address why this test, which was originally applied to a corporation, applies to claims seeking to pierce the limited liability of an LLC.
 

 ¶ 20. Both parties assert traditional corporate-veil-piercing law controls. And the circuit court applied the three-prong test from
 
 Gray
 
 to pierce the veils of the two LLCs, Restaurant of Jackson and SouthEastern. Under
 
 Gray,
 
 for a court to disregard the corporate entity and expose shareholders to liability, the complaining party must show:
 

 (a) some frustration of contractual expectations regarding the party to whom he looked for performance;
 

 (b) the flagrant disregard of corporate formalities by the defendant corporation and its principals; [and]
 

 (c) a demonstration of fraud or other ■ equivalent misfeasance on the part of the corporate shareholder.
 

 Gray,
 
 541 So.2d at 1047 (“To present a jury issue on a demand that the corporate veil be pierced, a party must present some credible evidence on each of these points.”)
 

 ¶ 21. While an LLC is a different type of legal entity than a corporation, commentators “agree that for purposes of piercing the corporate veil, an LLC would be treated like a corporation.”
 
 Hollowell v. Orleans Reg’l Hosp. LLC,
 
 217 F.3d 379, 385 n. 7 (5th Cir.2000) (citing Eric Fox,
 
 Piercing the Veil of Limited Liability Companies,
 
 62 Geo. Wash. L.Rev. 1143, 1167-68
 
 *39
 
 (1994), which notes most commentators assume the doctrine of piercing the corporate veil applies to LLCs). Like a corporation, an LLC is purely a creature of statute. And the Mississippi Limited Liability Company Act is clear that an LLC member cannot be individually liable for an LLC’s debt “by reason of being a member[.]” Miss.Code Ann. § 37-29-305(1) (Rev.2009).
 
 [1]
 

 See Grand Legacy, LLP v. Gant,
 
 66 So.3d 137, 146-47 (¶¶ 29-35) (Miss.2011) (noting the trial court properly held an LLC member was not personally liable solely based on his membership because there was no evidence the member participated in fraud);
 
 see also In re Broadstripe, LLC,
 
 444 B.R. 51, 102 (Bankr.D.Del.2010) (quoting
 
 Geyer v. Ingersoll Publ’ns Co.,
 
 621 A.2d 784, 793 (Del.Ch.1992) (“Delaware law permits a court to pierce the corporate veil of a company ‘where there is fraud or where it is in fact a mere instrumentality or alter ego of its owner.’ ”).
 

 ¶ 22. We find the circuit court correctly cited
 
 Gray
 
 as the proper standard for what a plaintiff must show
 
 in addition to LLC membership
 
 to hold an LLC member liable for the LLC’s debt. When faced with other approaches for determining when limited liability should be disregarded, the Mississippi Supreme Court reiterated
 
 Gray
 
 is the test Mississippi courts must apply.
 
 Buchanan v. Ameristar Casino Vicksburg, Inc.,
 
 957 So.2d 969, 976-77 (¶¶ 25-26) (Miss.2007) (expressly rejecting the federal ten-factor approach applied in
 
 Gammill v. Lincoln Life & Annuity Dis-tribs.,
 
 200 F.Supp.2d 632, 634-35 (S.D.Miss.2001)). Thus, we hold to pierce the veil of an LLC the complaining party must prove LLC membership as well as (a) some frustration of contractual expectations, (b) flagrant disregard of LLC formalities by the LLC members, and (c) fraud or misfeasance by the LLC member.
 
 Gray,
 
 541 So.2d at 1047.
 

 ¶ 23. Our supreme court has held it “will not rigidly maintain the distinct corporate identity [of the LLC’s more formal ancestor, the corporation,] where ... to do so would subvert the ends of justice.”
 
 Highway Dev. Co. v. Miss. State Highway Comm’n,
 
 343 So.2d 477, 480 (Miss.1977). We recognize there are situations justifying piercing the veil of an LLC. But as with piercing a corporate veil, piercing the veil of an LLC should be reserved “for factual circumstances which are clearly extraordinary — where to do otherwise would ‘subvert the ends of justice.’”
 
 Gray,
 
 541 So.2d at 1046 (quoting
 
 Johnson & Higgins of Miss., Inc. v. Comm’r of Ins.,
 
 321 So.2d 281, 284 (Miss.1975)). Mississippi has a strong public policy “favorfing] maintaining corporate entities and avoiding attempts to pierce the corporate veil[,]” and we find this policy extends to maintaining LLCs as well.
 
 Buchanan,
 
 957 So.2d at 977 (¶ 27) (citing
 
 Gray,
 
 541 So.2d at 1047).
 

 B. Material Factual Disputes
 

 ¶ 24. A successful veil-piercing claim must show each of the three
 
 Gray
 
 prongs.
 
 *40
 

 Gray,
 
 541 So.2d at 1047;
 
 see Foamex v. Superior Prods. Sales, Inc.,
 
 361 F.Supp.2d 576, 577-78 (N.D.Miss.2005) (granting defendant summary judgment because plaintiff, while presenting evidence on first two
 
 Gray
 
 factors, failed to create jury issue on third factor). Because HRS did not undis-putably show the first prong, frustration of contractual expectations, the grant of summary judgment to HRS must be reversed and remanded.
 

 1. Some Frustration of Contractual Expectations Regarding the Party to Whom HRS Looked for Performance
 

 ¶ 25. The first
 
 Gray
 
 prong addresses which person or business entity HRS expected to pay for the restaurant supplies. In
 
 Gray,
 
 the Mississippi Supreme Court found Morris Gray failed to establish this prong because he “had no doubt that he was contracting with a corporate party, not Billy Stegall or Tom Bradley personally. As a businessman himself, Gray appreciated this distinction.”
 
 Gray,
 
 541 So.2d at 1047. Similarly, in
 
 Rosson v. McFarland,
 
 the supreme court found it “clear that [Mark] McFarland did not contract with Rosson individually for performance or require Rosson to guarantee the performance of [Rosson’s corporation]. Thus, McFarland fails to satisfy the first prong required by
 
 Gray
 
 to pierce the corporate veil.”
 
 Rosson v. McFarland,
 
 962 So.2d 1279, 1286 (¶ 28) (Miss.2007). Our inquiry under this prong focuses on whether HRS knew it was contracting with a particular LLC, Restaurant of Jackson, rather than Schafer and Brick as individuals or Restaurant of Hattiesburg.
 

 ¶ 26. The circuit court found HRS “did not know who the real parties at interest were until after they had formed a contract within the parameters of the Uniform Commercial Code.” It is true, under the UCC, a binding contract is not formed until tender of deliver to the buyer. Miss. Code Ann. § 75-2-507(1) (Rev.2002). But merely because the UCC governs
 
 when
 
 the contract was formed does not mean a UCC seller can circumvent the limited liability of the entity to which it tendered the goods. As an incorporated business, HRS could appreciate the distinction between an individual and an LLC.
 
 See Gray,
 
 541 So.2d at 1047. And like
 
 Gray
 
 and
 
 Rosson,
 
 there is no evidence HRS believed it was selling restaurant goods to Schafer and Brick as individuals.
 

 ¶ 27. The circuit court relied on
 
 Thames & Co. v. Eicher,
 
 373 So.2d 1033 (Miss.1979) to find HRS was confused about the real party purchasing the supplies. But in
 
 Thames,
 
 the house purchasers dealt only with Mrs. L.T. Rogers, an individual. And Rogers did not reveal the house was being sold by her corporation until the day of the closing.
 
 Thames,
 
 373 So.2d at 1035.
 
 [2]
 
 Unlike
 
 Thames,
 
 HRS’s own representative testified HRS did not even deal with Schafer until after HRS tried to collect on past due invoices. And frustration with the performance of the LLC is not the type of frustration warranting disregarding an LLC’s separate identity.
 
 Rosson,
 
 962 So.2d at 1286 (¶ 27) (holding “negligent performance of contractual duties does not justify the disregard of the corporate entity”);
 
 see also Trevino v. Merscorp, Inc.,
 
 583 F.Supp.2d 521, 530 (D.Del.2008) (holding, under Delaware law, “the possibility that a plaintiff may have difficulty enforcing a judgment is not an injustice warranting piercing the corporate veil”).
 

 
 *41
 
 ¶28. While the evidence showed HRS did list “Copeland’s Franchise” on its initial invoices, Restaurant of Jackson requested HRS change the name of the account to “Restaurant of Jackson, LLC.” So any initial confusion about the limited liability of the account holder was cleared up with this change. At this point, HRS, without seeking a personal guarantee from Schafer or Brick, continued to tender goods to Restaurant of Jackson, which it knew to be an LLC.
 
 See Richardson v. Jenkins Builders, Inc.,
 
 737 So.2d 1030, 1032 (¶ 9) (Miss.Ct.App.1999) (finding “no arguable basis to conclude that Richardson either actually believed or was justified in believing that Jenkins was personally guaranteeing the contract’s performance”);
 
 cf. Gen. Motors Acceptance Corp. v. Bates,
 
 954 F.2d 1081, 1085 (5th Cir.1992) (finding plaintiff presented sufficient proof of frustration because the corporation’s “true persona was purposefully concealed”).
 

 ¶ 29. HRS did present evidence that a manager of the Jackson Copeland’s told HRS the restaurant was connected to the Hattiesburg Copeland’s, potentially creating the expectation that both restaurants were jointly responsible for the other’s debts. Further, SouthEastern, which managed the proceeds from both accounts, wrote checks to HRS for Restaurant of Jackson’s invoices. But the evidence is certainly not undisputed. The HRS representative testified he thought the Hatties-burg Copeland’s already had an account with HRS. Yet he chose to create a separate account for Restaurant of Jackson.
 

 ¶ 30. We further point out, HRS did not name Restaurant of Hattiesburg, Schafer, and Brick in the first suit, which the three defendants claim is a procedural error barring the second suit.
 
 [3]
 
 While not a bar, the failure to name Restaurant of Hattiesburg, Schafer, and Brick in the initial suit to collect the debt tends to undercut HRS’s argument that it expected these parties would be responsible for paying the debt. Schafer and Brick, as the two LLC members, were known or knowable when the first suit was filed. However, Restaurant of Hattiesburg is in a slightly different posture because of its relationship to SouthEastern, who
 
 was
 
 named in the first suit and, until the time of the first judgment, claimed all of Restaurant of Hatties-burg’s proceeds.
 

 ¶ 31. In remanding this matter,
 
 [4]
 
 we emphasize “the fact that the [members] of the two [LLCs] are the same is not of itself sufficient to treat the two [LLCs] as one.”
 
 Johnson & Higgins,
 
 321 So.2d at 285 (quoting 1 W. Fletcher, Cyclopedia of the Law of Private Corporations § 43, at 210 (Perm. Ed.1974));
 
 see also Buchanan
 
 957 So.2d at 978 (¶ 30) (rejecting employee’s attempt to pierce the corporate veil of a subsidiary to reach a parent corporation that wholly owned the subsidiary). Therefore, the fact Schafer and Brick owned Restaurant of Jackson, SouthEastern, and
 
 *42
 
 Restaurant of Hattiesburg is not enough in itself to treat the three LLCs as one.
 

 ¶ 32. Further, Mississippi has never adopted the “single business enterprise” theory to hold affiliated LLCs jointly liable for each other’s debts. In holding HRS was unable to identify the party to whom it looked for performance, the circuit court relied on the unpublished opinion,
 
 W. Oil & Gas JV, Inc. v. Castlerock Oil Co.,
 
 91 Fed.Appx. 901 (5th Cir.2003). In
 
 Castlerock,
 
 the United States Court of Appeals for the Fifth Circuit applied Texas’s “single business enterprise” theory of liability: “This doctrine provides that ‘when corporations are not operated as separate entities, but integrate their resources to achieve a common business purpose, each constituent corporation may be held liable for the debts incurred in pursuit of that business purpose.’ ”
 
 Id.
 
 at 904 (quoting
 
 Gardemal v. Westin Hotel Co.,
 
 186 F.3d 588, 594 (5th Cir.1999)). But in 2009, the Supreme Court of Texas expressly abrogated this theory as “fundamentally inconsistent” with the Texas Business Corporation Act.
 
 SSP Partners v. Gladstrong Investments (USA) Corp.,
 
 275 S.W.3d 444, 454-56 (Tex.2008). The Texas court held “[t]here is nothing abusive or unjust ... in the abstract” with corporations sharing “offices, accounting, employees, services, and finances.”
 
 Id.
 
 at 454. On remand, to hold Restaurant of Hattiesburg liable for Restaurant of Jackson and SouthEastern’s debt, HRS has to show actual frustration of identity due to the shared bank account. The existence of the shared bank account, alone, is not sufficient to meet this prong.
 

 ¶ 33. Because the circuit court erred in finding HRS undisputably showed its contractual expectations were frustrated, we reverse summary judgment in its favor and remand its claim for further proceedings.
 

 2. The Flagrant Disregard of Corporate Formalities by the Defendant Corporation and its Principals
 

 ¶ 34. Failure to show that undisputed facts establish the first
 
 Gray
 
 prong is reason alone to reverse summary judgment. Still, we briefly address the factual issues surrounding the remaining two requirements.
 

 ¶ 35. Analyzing the second prong of
 
 Gray
 
 is more difficult with an LLC than a corporation because an LLC imposes much less formalities on its members than a corporation. The traditional lack of formalities — failure to conduct regular meetings, failure to appoint officers and directors, etc.—does not necessarily signal LLC abuse.
 
 See Gen. Motors,
 
 954 F.2d at 1085 (example of failure to observe corporate formalities).
 

 ¶ 36. The circuit court held the LLC form had been flagrantly disregarded by Schafer and Brick based on two findings: (1) the three LLCs did not maintain separate checking accounts, and (2) Brick failed to produce documents at the judgment-debtor exam showing the observance of corporate formalities.
 

 ¶ 37. Regarding the shared bank account, it is undisputed both Restaurant of Jackson and Restaurant of Hattiesburg sent their proceeds to SouthEastern’s bank account. And SouthEastern claimed the income from both companies on its tax return. But at the summary-judgment hearing, Restaurant of Hattiesburg produced documents showing SouthEastern kept the income and expenses of both restaurants separate. We find this evidence of separate accounting sufficient to create a factual dispute over whether the common bank account shows flagrant disregard for the LLCs’ formalities. Like Texas, we decline to adopt a rule that LLCs sharing a bank account is per se an abusive prac
 
 *43
 
 tice.
 
 See SSP Partners,
 
 275 S.W.3d at 455 (“We have never held corporations liable for each other’s obligations merely because of centralized control, mutual purposes, and shared finances.”).
 

 ¶ 38. Concerning the failure to produce documents, we note Brick’s defense — the documents were in possession of his accountant — echos the successful defenses in both
 
 Rosson
 
 and
 
 Richardson. Rosson,
 
 962 So.2d at 1287 (¶ 34) (failure to produce tax documents in possession of attorney);
 
 Richardson,
 
 737 So.2d at 1031 (¶ 8) (failure to produce corporate records in possession of attorney). In
 
 Rosson,
 
 the supreme court found failure to produce tax documents did not prove the “books or tax returns did not exist.”
 
 Rosson,
 
 962 So.2d at 1287 (¶ 34). And putting forth the lack of documents as “evidence ... Rosson did not adhere to corporate formalities was ‘at best, extremely weak.’ ”
 
 Id.
 
 (quoting
 
 Richardson,
 
 737 So.2d at 1032). Thus, we find the circuit court erred in holding Brick’s failure to produce financial records at the judgment-debtor hearing undisput-ably proved a flagrant failure to keep LLC records.
 
 [5]
 

 3. A Demonstration of Fraud or Other Equivalent Misfeasance on the Part of the Corporate Shareholder
 

 ¶ 39. Restaurant of Hatties-burg, Schafer, and Brick argue the failure to pay a debt, even after a judgment is obtained, does not rise to the level of fraud. And they are right. Some bad action other than the underlying claim itself (here, an outstanding debt) must be shown.
 
 Penn Nat’l Gaming v. Ratliff,
 
 954 So.2d 427, 432 (¶ 10) (Miss.2007). In
 
 Penn National,
 
 the Mississippi Supreme Court “recognize[d] that the corporate veil will not be pierced, in either contract or tort claims, except where there is some abuse of the corporate form itself.”
 
 Id.; see also Trevino,
 
 583 F.Supp.2d at 530 (holding, under Delaware law, the type of fraud or injustice required under “must be found in the defendants’ use of the corporate form”).
 

 ¶ 40. In
 
 Richardson,
 
 this court held:
 

 As to the third consideration, Richardson presented no evidence that Jenkins, from the beginning, was intent on obtaining Richardson’s money for his own personal use with no intention of performing on the contract and that he used a shell corporation to shield himself from personal liability on the day of reckoning that was inevitably to come.
 

 Richardson,
 
 737 So.2d at 1032 (¶ 10). HRS did not produce evidence that Schafer and Brick committed fraud by trying to use a dummy or shell corporation to shield themselves from personal liability. There is no evidence they contracted with HRS for supplies to be used for their personal use with no intention to pay HRS. Instead, evidence shows they tried to operate a Copeland’s in Jackson that failed. While during the time of the first suit, SouthEastern did make payments to Schafer and Brick, Brick testified these payments were legitimate reimbursements for company expenses.
 

 ¶41. But Schafer and Brick set up multiple LLCs for its restaurant operations. While it is not fraudulent to limit the liabilities of each restaurant to its own debts, SouthEastern did conveniently claim the income of Restaurant of Hatties-
 
 *44
 
 burg until it was popped with a $36,000 judgment.
 

 ¶ 42. This prong ultimately comes down to Restaurant of Hattiesburg’s opening its own bank account, which occurred the same month the circuit court denied its motion to reconsider the judgment against it. The circuit court held Restaurant of Hattiesburg’s opening of this account was “a volitional act to divert funds” from HRS. We find this holding to be based solely on a factual conclusion. Thus, it is inappropriate for summary judgment. Brick testified Restaurant of Hattiesburg opened its own bank account because, without multiple restaurants, there was no need for consolidated accounting services. While we certainly understand the circuit court’s skepticism, Brick’s explanation does create a factual issue on this prong.
 

 II. Is HRS’s Second Suit Procedurally Permissible?
 

 ¶ 43. Restaurant of Hattiesburg, Schafer, and Brick ask we reverse the denial of their motion and render summary judgment in their favor for three reasons: (1) the bars of res judicata and collateral es-toppel, (2) the bars of the statute of limitations and laches, and (3) HRS’s failure to join Restaurant of Jackson and SouthEastern as defendants in the second suit. These procedural objections boil down to the questions: Does Mississippi permit a second, subsequent veil-piercing action? And if so, when must the second suit be filed and who must be named as defendants?
 

 ¶ 44. In almost all the corporate-veil-piecing cases in Mississippi, the plaintiff brought the underlying contract or tort claim in the same action as the veil-piercing claim.
 
 E.g., Penn Nat’l Gaming,
 
 954 So.2d at 431-32 (¶¶ 7-10) (naming parent company in tort action against subsidiary). But Mississippi law has not required a plaintiff to do so.
 
 See Buchanan,
 
 957 So.2d at 971-72, 980 (¶¶ 3-6, 42) (addressing merits of veil-piercing claim against parent company of employer in second suit for bad faith refusal to pay workers’ compensation benefits);
 
 Stanley v. Mississippi State Pilots Gulfport, Inc.,
 
 951 So.2d 535 (Miss.2007) (allowing bankruptcy trustee to pierce the corporate veil of bankrupt corporation to recovery judgment debt obtained against corporation in prior suit). Thus, we hold: (1) a second suit is permissible; (2) once an underlying judgment is obtained against the corporation or LLC, the judgment debtor corporation or LLC does not have to be named in the second suit; and (3) the statute of limitations for the second suit begins to run from the date the judgment is rendered in the first suit.
 

 A. Res Judicata and Collateral Estoppel
 

 ¶ 45. Restaurant of Hattiesburg, Schafer, and Brick argue the doctrines of res judicata and collateral estoppel bar a second suit. They contend, because the veil-piercing claim could have been brought in the first suit, HRS is now barred from asserting the claim in the second suit.
 
 See Hill v. Carroll County,
 
 17 So.3d 1081, 1085 (¶ 10) (Miss.2009) (citation omitted) (holding, when the four identities of res judicata are established, “any claims that could have been brought in the prior action are barred”).
 

 ¶ 46. In a factual scenario similar to this one — where a successful judgment creditor who later learned the judgment debtor corporation transferred all of its assets to its sole shareholder — the Alabama Supreme Court rejected the shareholder’s res judicata argument.
 
 Backus v. Watson,
 
 619 So.2d 1342, 1344-45 (Ala.1993). Mississippi’s res judicata doctrine is similar to Alabama’s, which bars not only claims that were litigated but also those that “could have been litigated in the
 
 *45
 
 former suit.”
 
 Id.
 
 at 1344 (quoting
 
 McGruder v. B & L Constr. Co.,
 
 331 So.2d 257, 259 (Ala.1976)). Like HRS, Mary Backus claimed it was not until she tried to collect her judgment that she learned the corporate owner was ignoring the separate corporate existence.
 
 Id.
 
 The Alabama court held:
 

 Backus’s present action against [the shareholder] Watson was based on a cause of action entirely different from the one on which her action against the club was based, and in the present action she sought to litigate an issue that was not litigated, and could not have been litigated, under the pleadings in her action against the club, even though Watson appeared at the trial of that action and apparently participated in the club’s defense. The litigation of the central issue presented in this action— whether the club was operated as Watson’s alter ego and, therefore, whether the “corporate veil” should be pierced— has not been foreclosed by a previous judgment binding as between these parties. Therefore, the trial court could not have properly relied on the doctrine of res judicata as a basis for its judgment.
 

 Backus,
 
 619 So.2d at 1344-45 (internal citations omitted).
 

 ¶ 47. Mississippi law confirms, as in
 
 Backus,
 
 res judicata does not bar HRS’s veil-piercing claim. “[T]he doctrine of res judicata requires four identities to be present before it applies: (1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made.”
 
 Hill,
 
 17 So.3d at 1085 (¶ 10). And “the absence of any one of the elements is fatal to the defense of res judicata.”
 
 Id.
 
 (quoting
 
 Estate of Anderson v. Deposit Guar. Nat’l Bank,
 
 674 So.2d 1254, 1256 (Miss.1996)).
 

 ¶ 48. Here, we find no identity of the cause of action, which is “the underlying facts and circumstances upon which a claim has been brought.”
 
 Id.
 
 at 1085 (¶ 13) (citing
 
 Black v. City of Tupelo,
 
 853 So.2d 1221, 1225 (¶ 11) (Miss.2003)). The facts and circumstances HRS asserted to support its claim for payment in the first suit are not the same as those asserted in support of its veil-piercing claim. Section I of this opinion discusses the factual disputes surrounding the second suit — the effect of sharing SouthEastern’s bank account, Schafer and Brick’s maintenance of corporate records, and the relationship of the three LLCs. The first suit was not based on any of these facts but instead was limited to HRS’s undisputed delivery of restaurant supplies and non-payment by Restaurant of Jackson and/or SouthEastern. In fact, a circumstance key to HRS’s fraud claim — Restaurant of Hattiesburg’s opening a separate bank account — did not occur until after the first suit was filed. With no identity of the cause of action, the second suit is not barred by res judicata.
 
 Id.
 
 at 1085 (¶ 10).
 

 ¶ 49. “Collateral estoppel precludes parties from relitigating issues that are actually litigated, determined by, and essential to the judgment in a former action, even though a different cause of action is the subject of the subsequent action.”
 
 Richardson v. Audubon Ins. Co.,
 
 948 So.2d 445, 449-50 (¶ 14) (Miss.Ct.App.2006) (citing
 
 Hollis v. Hollis,
 
 650 So.2d 1371, 1377 (Miss.1995)). The only issue actually litigated in the first suit was Restaurant of Jackson and SouthEastern’s liability for the entire amount of HRS’s invoices plus services charges. Collateral estoppel, as applied in the second suit, merely prevents Restaurant of Hattiesburg, Schafer, and Brick from denying
 
 *46
 

 Restaurant of Jackson and SouthEastern
 
 are liable for the underlying judgment debt. It does not impact the issue of whether Restaurant of Hattiesburg, Schafer, and Brick should be also be held liable for this judgment debt under a veil-piercing theory because this issue was not litigated in the first suit.
 

 B. Statute of Limitations and Laches
 

 ¶ 50. Restaurant of Hattiesburg, Schafer, and Brick argue the three-year statute of limitations for open accounts applies in this case. Miss.Code Ann. § 15-1-29 (Rev.2003) (requiring an action on an open account must be filed within three years after the cause of action accrued). And because the cause of action on Restaurant of Jackson’s account accrued by February 2006, they argue HRS’s second suit to recover from them for the open account, filed in November 2009, is barred. They also assert laches, arguing HRS had the right to discovery in the first suit and could have asserted a veil-piercing claim in that action.
 
 See Cannada v. Marlar,
 
 185 So.2d 649, 651 (Miss.1966) (defining laches as the “omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to adverse party”) (quotations and citation omitted).
 

 ¶ 51. HRS emphasizes the need to pierce the corporate veils of Restaurant of Jackson and SouthEastern did not arise until after it obtained that judgment in October 2007. Because its second suit was to collect the judgment from the first suit, HRS argues the seven-year statute of limitations for actions “founded on any judgment” applies. Miss.Code Ann. § 15 — 1—43 (Rev.2003) (requiring an action “founded on any judgment or decree rendered by any court of record in this state” must be brought within seven years next after the judgment or decree is rendered or last renewed).
 

 ¶ 52. We find HRS’s view to be correct one:
 

 In order to determine whether the corporation veil should be pierced, the corporation must first be assumed liable. An attempt to pierce the corporate veil is not itself a cause of action but rather is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract.
 

 1 Fletcher, Cyclopedia of the Law of Corporations § 41.28, at 166-67 (Rev.2006). Here, HRS’s veil-piercing claim was not a direct action to recover on the open account but instead a derivative action based on the judgment against Restaurant of Jackson and SouthEastern. Because the purpose of HRS’s subsequent veil-piercing action is to collect the judgment debt, the seven-year statute of limitations applies and does not bar HRS’s 2009 suit. Miss. Code Ann. § 15-1-43;
 
 see Backus,
 
 619 So.2d at 1343-44 (applying statute of limitations for collecting a judgment).
 

 ¶ 53. Regarding HRS’s laches argument, we agree discovery in the first case
 
 could have
 
 led to HRS naming Schafer, Brick, or Restaurant of Hattiesburg as one of the “John Does 1-10” in their complaint. But we decline to hold HRS
 
 should have
 
 used discovery in the first suit to learn how Schafer and Brick handled the finances of the three LLCs and its failure to do so adversely prejudices Restaurant of Hattiesburg, Schafer, and Brick. If anything, waiting to investigate its debtors post-judgment created a practical problem for HRS, which has to prove its contractual expectations were frustrated because it expected at the time it sold the supplies to Restaurant of Jackson that the family of LLCs and their owners would be liable for the debt. But this is an issue of
 
 *47
 
 proof to be determined by the trier of fact on remand and not a procedural bar.
 

 C. Necessary Parties
 

 ¶ 54. Finally, Restaurant of Hat-tiesburg, Schafer, and Brick argue Restaurant of Jackson and SouthEastern were “necessary and indispensable parties” in the second suit and HRS’s failure to name them as defendants is fatal to its claim.
 
 See
 
 M.R.C.P. 19 (joinder of necessary parties); M.R.C.P. 21 (misjoinder and non-joinder). Specifically, they claim for HRS to succeed, it has to show the three
 
 Gray
 
 prongs “are present as to companies, i.e., that Restaurant of Jackson, LLC and SouthEastern Restaurants, LLC confused contractual expectations, disregarded corporate formalities, and committed fraud.” But a plain reading of
 
 Gray
 
 shows it is the actions of Restaurant of Hattiesburg, Schafer, and Brick that the circuit court must scrutinize to determine if they should be held liable for Restaurant of Jackson and SouthEastern’s judgment debt.
 
 Gray,
 
 541 So.2d at 1047-48 (finding no evidence Gray looked to corporate owners for performance and no evidence corporate owners committed fraud). Restaurant of Jackson and SouthEastern already have a final judgment against them for the debt. This issue was not appealed. So even if they had been named in the second suit, they would be estopped from denying their liability. Because the issue in the second suit is Restaurant of Hattiesburg, Schafer, and Brick’s liability for the judgment debt, we find HRS included all necessary parties in its veil-piercing action. M.R.C.P. 19(a).
 

 CONCLUSION
 

 ¶ 55. While there is no procedural barrier to HRS’s suit to pierce the veil of its judgment creditors, we find HRS was not entitled to summary judgment under Rule 56(c). Thus, we reverse the summary judgment awarded in HRS’s favor and remand this case for further proceedings consistent with this opinion. We affirm the denial of summary judgment in Restaurant of Hattiesburg, Schafer, and Brick’s favor.
 

 ¶ 56. THE JUDGMENT OF THE LAMAR COUNTY CIRCUIT COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
 

 LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS AND FAIR, JJ., CONCUR.
 

 IRVING, P.J., BARNES AND RUSSELL, JJ., CONCUR IN PART AND IN THE RESULT.
 

 CARLTON, J., CONCURS IN RESULT ONLY.
 

 [1]
 

 . On January 1, 2011, the Revised Mississippi Limited Liability Company Act went into effect. The Revised LLC Act, which was not in place during this action, was adopted to provide greater clarity of existing LLC statutory requirements, to set up more default rules for LLCs without operating agreements, and to incorporate language from Delaware’s LLC Act to enable Mississippi courts to look to Delaware law when interpreting the Mississippi’s Revised LLC Act.
 
 See
 
 Miss.Code Ann. §§ 79-29-101 to -1317 (Supp.2011). Mississippi Code Annotated section 79-29-305(1) (Rev.2009) was amended and re-codified as Mississippi Code Annotated section 79-29-311(1) (Supp.2011). The new code section provides a member cannot be personally liable for an LLC debt
 
 "solely
 
 by reason of being a member[.]" Miss.Code Ann. § 79-29-311(1) (Supp.2011) (emphasis added).
 

 [2]
 

 . Further, we note in
 
 Thames
 
 the Mississippi Supreme Court did not pierce the corporate veil under
 
 Gray
 
 but instead found Rogers personally liable as the agent of an undisclosed principal.
 
 Thames,
 
 373 So.2d at 1035.
 

 [3]
 

 .
 
 See
 
 Sections II.A and II.B,
 
 infra.
 

 [4]
 

 . Though the evidence does not support a veil-piercing claim against Schafer and Brick, we do not render summary judgment in their favor. Rule 56 states summary judgment shall be granted if the evidence "show[s] that there is no genuine issue as to any material fact and that
 
 the moving party
 
 is entitled to a judgment as a matter of law.” M.R.C.P. 56(c) (emphasis added). Schafer and Brick were not the “moving party” for summary judgment based on the evidence. Instead, they merely opposed HRS’s motion for summary judgment, arguing the facts supporting HRS's veil-piercing claim were disputed. This court cannot sua sponte grant summary judgment on a basis not raised by the moving party.
 
 Peavey Electronics Corp. v. Baan U.S.A., Inc.,
 
 10 So.3d 945, 956-57 (¶¶ 25-27) (Miss.Ct.App.2009).
 

 [5]
 

 . Restaurant of Hattiesburg, Schafer, and Brick urge us to view the circuit court’s ruling in the second suit as an improper sanction for failure to produce financial records at the judgment-debtor exam for the first suit. But we find the circuit court merely considered this circumstance in his
 
 Gray
 
 analysis, and this record withholding is insufficient in itself to prove disregard of LLC formalities.