541 So.2d 1044 (1989)
Morris GRAY
v.
EDGEWATER LANDING, INC.
No. 58411.
Supreme Court of Mississippi.
April 5, 1989.
*1045 Michael P. Younger, Johnston & Younger, Brandon, for appellant.
Anna C. Furr, Jackson, for appellee.
Before HAWKINS, P.J., and ROBERTSON and PITTMAN, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal arises from a breach of lease dispute between a landlord and his corporate restaurateur tenant. The landlord claims that the restaurateur's neglect resulted in severe damage to the leased premises. He seeks to hold the shareholders individually as well. After the Circuit Court had directed a verdict exonerating the shareholders, the jury found for the landlord and against his corporate ex-tenant. As it seems unlikely he will obtain any degree of satisfaction from the now-dormant corporation, the landlord appeals the discharge of the shareholders. We affirm.

II.

A.
Morris Gray lives in Rankin County, Mississippi, and owns a long-term leasehold interest in land bordering the Ross Barnett Reservoir. On March 8, 1977, Gray leased the premises and its improvements to Edgewater Landing, Inc. for five years, with an option to renew for a like term. Edgewater agreed to renovate the existing building at its expense, and to operate a restaurant therein. The lease contained a common clause that upon termination the lessee would return the premises in good condition, reasonable wear and tear excepted.
Edgewater successfully operated a restaurant and lounge on the premises for one and one-half years. At that point Billy Stegall, Edgewater's original shareholder, sold all of his shares in the corporation to Tom Bradley, who continued to run the restaurant. Sometime thereafter, Bradley transferred one-half of the stock to a third party. These shares eventually were acquired by Sandra Martin, Bradley's bookkeeper. Sandra Martin's husband, Randy, acted as the manager of the restaurant.
The corporate restaurateur exercised its option to continue occupancy for an additional five years, thus scheduling the leasehold to terminate on March 31, 1987. Prior to that time, however, on September 29, 1986, the restaurant's liquor license expired, and the corporation was unable to renew it. This contretemps triggered the termination of the lease.
Gray assumed control of the restaurant on September 30, 1986. He was unhappy with what he found. The roof leaked, causing tiles from the suspended ceiling to become watersoaked. The waterfront patio area was overgrown with weeds. Numerous floor tiles had peeled up. Much of the wooden trim on the outside of the building was rotted. Gray denied access to employees of Edgewater Landing, Inc. when they returned to clean the restaurant and to reclaim their personal effects and equipment.

B.
On October 6, 1986, Edgewater Landing, Inc. commenced this civil action by filing its complaint in the Circuit Court of Madison County, Mississippi, naming Morris Gray as defendant and asserting a claim for conversion. *1046 Gray filed a counterclaim charging breach of the lease agreement and joining individually as third party defendants on the lease breach claim Tom Bradley and Sandra L. Martin, shareholders of Edgewater Landing, Inc. Venue was changed to the Circuit Court of Rankin County, Mississippi.
Trial commenced on May 5, 1987, at the close of which the Circuit Court directed a verdict in favor of the individual third party defendants, holding Gray's evidence insufficient as a matter of law to "pierce the corporate veil." On Edgewater's conversion claim, the jury returned a verdict for Gray. On Gray's breach of lease counterclaim, the jury returned a verdict in his favor and against Edgewater and assessed damages in the amount of $102,342.00.
From the directed verdict for Bradley and Martin, Gray has perfected this appeal.

III.
Gray's four separate assignments may be reduced to a single complaint: that the Circuit Court erred when it refused to submit to the jury the matter of the personal liability vel non of the shareholders of Edgewater Landing, Inc., Sandra Martin and Tom Bradley.
Directed verdicts are procedurally prescribed and proscribed by Rule 50(a), Miss. R.Civ.P. The Official Comment to that rule told the Circuit Court to look "solely to the testimony on behalf of the opposing party; if such testimony, along with all reasonable inferences which can be drawn therefrom, could support a verdict for that party, the case should not be taken from the jury."
Many of our cases make the same point. When a party moves for a directed verdict at the close of the evidence, the Circuit Court must consider the evidence before it at that time in the light most favorable to the party against whim the motion has been made, giving that party the benefit of all favorable inferences that may reasonably be drawn therefrom. See Hall v. Mississippi Chemical Express, Inc., 528 So.2d 796, 798 (Miss. 1988); Dale v. Bridges, 507 So.2d 375, 377 (Miss. 1987); Hickox By and Through Hickox v. Holleman, 502 So.2d 626, 628 (Miss. 1987); T.C.L., Inc. v. Lacoste, 431 So.2d 918, 921 (Miss. 1983). We take a like view of the evidence when considering on appeal the charge that the Circuit Court erred in directing a verdict.
Where, in the context of an action for breach of a lease or other similar consensual undertaking, a party seeks to pierce the veil of the corporation with whom he has contracted and to hold the shareholders personally liable, our focus is fixed upon the expectations of the parties in concluding the bargain. Since contract liability arises from an essentially consensual relationship, courts generally decline to disregard the corporate entity, choosing instead to enforce the contract as written. 1 Fletcher Cyc. Corp., § 41.85 (perm. ed. 1983).
As do most courts, this Court has reserved piercing the corporate veil for factual circumstances which are clearly extraordinary  where to do otherwise would "subvert the ends of justice." Johnson & Higgins of Mississippi, Inc. v. Commissioner of Insurance, 321 So.2d 281, 284 (Miss. 1975). Among this Court's reports may be found a long string of decisions reflecting our law's commitment to the legal integrity of the corporate entity  and the concomitant limited liability of shareholders. See e.g. Illinois Central Railroad Co. v. Cotton Seed Products Co., 166 Miss. 579, 589, 148 So. 371, 372 (1933) (exonerating parent corporation); Berry Sons' Co., Inc. v. Owen, 176 Miss. 562, 570, 169 So. 685, 687 (1936) (same); Murdock Acceptance Corp. v. Adcox, 245 Miss. 151, 164, 138 So.2d 890, 892 (1962) (same); Rauch Industries, Inc. v. Poloron Products of Mississippi, Inc., 362 So.2d 605, 607 (Miss. 1978) (same); see also Gardner v. Jones, 464 So.2d 1144, 1151 (Miss. 1985) (exonerating principal shareholder and president acting as corporate agent); see also T.C.L., Inc. v. Lacoste, 431 So.2d 918, 922 (Miss. 1983).
Nothing in Thames & Co. v. Eicher, 373 So.2d 1033 (Miss. 1979) is to the contrary. Moreover, this case is wholly distinguishable from Gibson v. Manuel, 534 So.2d 199 (Miss. 1988). In Gibson we held a corporate *1047 officer to a fiduciary obligation to the plaintiff who was pledgee of all corporate stock. Here we perceive no basis for charging Bradley and Martin with any fiduciary status vis-a-vis Gray.
A corollary point should be noted. The lease agreement sued upon was executed by the corporation only. Bradley and Martin, in addition to being shareholders, were agents of the corporation as well. Gray complains that Bradley and Martin were the individuals whose actions for the corporation offended the corporation's obligations under the lease agreement. As agents for a disclosed principal, however, they incur no individual liability, absent fraud or other equivalent conduct. Gardner v. Jones, 464 So.2d 1144, 1151 (Miss. 1985); Thames & Co. v. Eicher, 373 So.2d 1033, 1035 (Miss. 1979).
The prior holdings of this Court are consonant with the great weight of authority elsewhere to the effect that, in contract actions, the corporate fiction will not be disregarded in cases of simple negligence. See Kaites v. Dept. of Environmental Resources, 108 Pa.Cmwlth. 267, 529 A.2d 1148, 1151 (1987) ("He may be held liable for misfeasance but not for simple nonfeasance"). A corollary of this general statement is that the breach of a contract, without more (i.e., a showing of fraud) does not justify the disregard of the corporate entity. Grayson v. Nordic Construction Co., Inc., 22 Wash. App. 143, 589 P.2d 283, 286 (1978). As one authority has stated:
The attempt to hold another party liable where the claim asserted is of contractual origin presents difficulties. The question which must be met and answered is why one who contracted with a selected party and received the promise he bargained for should be allowed to look to another merely because he is disappointed in the selected party's performance. The answer under contract law is that he may not hold the other liable without additional compelling facts.
Fletcher Cyc.Corp., § 41.85 (perm. ed. 1983) (footnotes omitted); see also Condenser Service & Engineering Co. v. Brunswick Port Authority, 87 Ga. App. 469, 74 S.E.2d 398, 402 (1953) (finding no liability to a parent corporation for the negligent performance by its subsidiary under a leasing agreement).
Just as the corporation's negligent performance of contractual duties does not justify the disregard of the corporate entity, neither does the fact that the principal shareholder oversees the day-to-day operation.
Because the cardinal rule of corporate law is that a corporation possesses a legal existence separate and apart from that of its officers and shareholders . .. the mere operation of corporate business does not render one personally liable for corporate acts.... Sole ownership of a corporation by one person or another corporation is not a factor, and neither is the fact that the sole owner uses and controls it to promote his ends.
Amason v. Whitehead, 186 Ga. App. 320, 367 S.E.2d 107, 108 (1988) (citations omitted) (emphasis added).
To cause a court to disregard the corporate entity and justify shareholder liability, the complaining party must demonstrate: (a) some frustration of contractual expectations regarding the party to whom he looked for performance; (b) the flagrant disregard of corporate formalities by the defendant corporation and its principals; (c) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder. T.C.L., Inc. v. Lacoste, 431 So.2d 918, 922 (Miss. 1983); Thames & Co. v. Eicher, 373 So.2d 1033, 1035 (Miss. 1979). To present a jury issue on a demand that the corporate veil be pierced, a party must present some credible evidence on each of these points.
Applying these standards to today's case, we find that Gray has failed to offer proof sufficient to create a jury issue on any of these three requisites. First, Gray admits that, despite the change in ownership, he had no doubt that he was contracting with a corporate party, not Billy Stegall or Tom Bradley personally. As a businessman himself, Gray appreciated this distinction. *1048 Second, Gray offered no proof that corporate formalities were not followed by Edgewater Landing, Inc. Indeed, the evidence suggests the contrary, that formalities were at all times adhered to. Third, Gray has put forth no proof that the corporate agent/shareholders perpetrated upon him any fraud. To the contrary, the proof adduced at trial indicates that the lessee and its agents were guilty of no more than simple negligence in the maintenance of the leased premises.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., dissents without written opinion.