## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2014-CA-01036-COA

TOM BROWN AND SHANNON BROWN                                APPELLANTS

v.

MURRAY WALDRON D/B/A WALDRON                                APPELLEE
PROPERTIES,  LLC

| | |
|---|---|
| DATE OF JUDGMENT: | 06/25/2014 |
| TRIAL JUDGE: | HON. ANTHONY ALAN MOZINGO |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | SAMUEL STEVEN MCHARD |
| | PAUL MANION ANDERSON |
| ATTORNEY FOR APPELLEE: | MARK A. NELSON |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | SUMMARY JUDGMENT GRANTED TO APPELLEE |
| DISPOSITION: | AFFIRMED - 03/01/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND WILSON, JJ.**

**LEE, C.J., FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.     In 2006, Tom Brown and Shannon Brown purchased a home in Hattiesburg, Mississippi, built by Waldron Properties LLC.  In 2011, the Browns noticed cracks in the wall of their home and sought the expertise of a licensed engineer.  The engineer indicated the problems were caused by a defect in the construction of the foundation.

¶2.     On January 5, 2012, pursuant to the New Home Warranty Act (NHWA),[1] the Browns

_____

[1] *See* Miss. Code Ann. §§ 83-58-1 to -17 (Rev. 2011 & Supp. 2015).

notified Murray Waldron, the sole member of Waldron Properties, of the defects and gave him the opportunity to cure them. After receiving no response from Waldron, the Browns filed suit in the Lamar County Chancery Court against Waldron d/b/a Waldron Properties LLC (WP) alleging negligence and breach of warranty. The case was subsequently transferred to the Lamar County Circuit Court.

¶3. The trial court initially granted Waldron's first request for summary judgment, but later granted the Browns' motion to reconsider, set aside its previous judgment, and reopened discovery. Upon conclusion of discovery, Waldron filed his second request for summary judgment. The Browns also filed a motion for summary judgment. After a hearing, the trial court denied the Browns' motion and granted Waldron's motion. The trial court found that WP, not Waldron individually, was the builder of the Browns' home; thus, Waldron was not personally liable for any defects in the home's construction. The Browns now appeal, asserting the following issues: (1) Waldron is personally liable for the defects since he built the home; (2) the NHWA constitutes a contract between them and Waldron; (3) Waldron is personally liable as an agent of an undisclosed principal; (4) if WP is the builder, then the corporate veil should have been pierced to hold Waldron personally liable; (5) the reinstatement of a defunct LLC does not relieve Waldron of personal liability; and (6) allowing Waldron to reinstate WP to avoid personal liability is unconstitutional.

**FACTS**

¶4. The Browns purchased the home in question from Ray Richard and Nick Welch on October 13, 2006. Richard had hired WP to build the home. The Browns met with Waldron

2

prior to purchasing the home. According to the Browns, Waldron introduced himself as the builder and informed the Browns that he built the best house foundations in the Hattiesburg area. During closing, the Browns received a document entitled "Notice to Home Buyer of the New Home Warranty Act" (the Notice). The NHWA mandates that the builder give written notice of the requirements of the NHWA. *See* Miss. Code Ann. § 83-58-7 (Rev. 2011). The signature on the "seller"[2] line of the Notice says "Murray Waldron." The Browns contend this indicates Waldron built the home in his individual capacity, and not WP. However, the Browns also signed a Seller's Disclosure Statement during closing, which listed WP as the builder. This disclosure statement was also signed by "Waldron Properties LLC, Murray Waldron." The home inspection reports identify the contractor as WP. All other permits, licenses, and certificates of insurance related to the building of the Browns' home indicated WP was the builder.[3]

¶5.     Shannon Brown's deposition excerpt indicates that the couple contacted Waldron using the phone number listed on the sign in the yard of the home in question. Shannon admittedly could not remember anything else about the sign, just that there was a phone number listed. According to Waldron, the sign he used in the normal course of business advertised the builder as "Waldron Properties LLC; Luxury Home Builder; Murray Waldron CPB" and listed a number to contact. This number was to Waldron's cell phone.

---

[2] As previously stated, Ray Richard and Nick Welch owned the property, not Waldron or WP.

[3] The Browns state the Building Permit Application was signed by Waldron in his individual capacity. However, this same permit application names the "Builder/Remodeler" as Waldron Properties.

¶6. In 2008, the Browns contacted Waldron about drainage issues.[4] Waldron issued them a check for $1,500 to cover repair costs. This check was drawn on the WP account and signed by Waldron.

¶7. As previously stated, the Browns sent Waldron a notice of claim on January 5, 2012. The Browns also sent a notice on May 9, 2012, to Steve Napier with Hattiesburg Insurance Inc. indicating that they wished to discuss a claim "for defects in a home constructed by Waldron Properties LLC."[5] This letter indicates WP had ceased business operations. WP had been administratively dissolved in 2009. However, Waldron reinstated WP on July 31, 2012, by filing an annual report. This occurred after the Browns filed their complaint on July 9, 2012, in the Lamar County Chancery Court. WP was not named in the suit, and the Browns admitted that they intended to sue only Waldron, not WP.

## STANDARD OF REVIEW

¶8. In considering a trial court's grant of a motion for summary judgment, this Court conducts a de novo review and "examines all the evidentiary matters before it – admissions in pleadings, answers to interrogatories, depositions, affidavits, etc." *City of Jackson v. Sutton*, 797 So. 2d 977, 979 (¶7) (Miss. 2001) (citation omitted). The Mississippi Supreme Court has clarified the summary-judgment standard, explaining that "[t]he movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2)

---

[4] In this instance, the Browns did not follow the dictates of the NHWA when notifying Waldron of the drainage issues.

[5] The record includes a document from Nationwide Insurance stating no coverage existed for the Browns' claims against Waldron.

4

on the basis of the facts established, he is entitled to [a] judgment as a matter of law." *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶11) (Miss. 2013) (citation omitted). The supreme court further stated that "[t]he movant[s] bear[] the burden of production if, at trial, [they] would bear the burden of proof on the issue raised. In other words, the movant[s] only bear[] the burden of production where [they] would bear the burden of proof at trial." *Id*. at 88-89 (¶11) (citations omitted). The supreme court again clarified that "while [d]efendants carry the initial burden of persuading the trial judge that no issue of material fact exists and that they are entitled to summary judgment based upon the established facts, [the plaintiffs] must carr[y] the burden of producing sufficient evidence of the essential elements of [their] claim at the summary-judgment stage, as [they] would carry the burden of production at trial." *Id*. at (¶13).

## DISCUSSION

### I.    Waldron's Invidual Liability

¶9.    The Browns contend Waldron is personally liable for the defects since he built the home, not WP. The Browns cite to Mississippi Code Annotated section 83-58-3(a) (Rev. 2011) for support, which defines a builder as "any person, corporation, partnership, or other entity which constructs a home . . . for the purpose of sale." According to the Browns, this indicates that an individual can be sued under the NHWA. To support their argument, the Browns cite to the Notice in which Waldron signed his name, not WP, on the "seller" line. The Browns also claim Waldron used his personal cell phone to conduct business and never mentioned to them that WP was the actual builder.

5

¶10. The NHWA does contemplate that an individual person can be a builder. However, in this instance, it is clear that Waldron was not the builder of the Browns' home – WP was the builder. All of the documents, save the Notice, indicate WP was the builder. This issue is without merit.

## II. Breach of Contract

¶11. The Browns next contend that the Notice is a contract that should be enforced according to its plain language, and this includes finding Waldron built the home in his individual capacity. The Browns further argue that this purported contract is unambiguous; thus, any parol evidence would be inadmissible. The Notice includes all the code provisions of the NHWA and states, "BY SIGNING BELOW BUYER(S) ACKNOWLEDGE THAT BUYER(S) HAVE RECEIVED WRITTEN NOTICE OF THE NEW HOME WARRANTY ACT AS REQUIRED IN 83-58-7 OF THE MISSISSIPPI CODE." Waldron and both Tom and Shannon Brown signed the document. However, the Notice is simply a form document setting out the provisions of the NHWA. This Notice is not a contract. In fact, the code anticipates the need for homeowners to file breach-of-contract claims in addition to breach-of-home-warranty claims: "Nothing in this chapter shall prevent the owner from filing a cause of action based on breach of contract and remedies attendant to such cause of action." Miss. Code Ann. § 83-58-17(2) (Rev. 2011). We also note that in the Browns' response in opposition to Waldron's motion to dismiss or transfer, they admitted that they had no contract with Waldron and their claims were not contract claims. This issue is without merit.

## III. Agent of Undisclosed Principal

6

¶12. In their next issue, the Browns claim that Waldron was acting as the agent of an undisclosed principal; thus, he is personally liable for the defects. The Browns contend they had no knowledge of WP's existence or that Waldron was an agent of WP. The Browns rely on the Notice signed by Waldron and the fact that Waldron introduced himself to them as the builder.

¶13. "A person acting as agent for another is personally answerable if at the time of making the contract in his principal's behalf he failed to disclose the fact of his agency." *Kelly v. Guess*, 157 Miss. 157, 127 So. 274, 276 (1929); *see also Bailey v. Worton*, 752 So. 2d 470, 475-76 (¶14) (Miss. Ct. App. 1999) ("Though an agent is personally answerable if at the time of making the contract in his principal's behalf he failed to disclose the fact of his agency, the other party to the contract may proceed against the agent or against the principal.").

¶14. We are not persuaded by the Browns' argument. Although the Notice is signed by Waldron, all other documents in the record indicate that WP was the builder. This also includes the seller's disclosure statement, which was signed by the Browns. Although Shannon's deposition excerpt indicates the couple contacted Waldron using the number listed on the sign, she admittedly could not remember any other details. And according to Waldron, the sign he regularly used advertised the builder as "Waldron Properties LLC; Luxury Home Builder; Murray Waldron CPB." The phone number listed was for Waldron's cell phone. We recognize that the Browns indicated Waldron introduced himself as the builder. However, we cannot find that this one statement by Waldron indicated any intention on his part to hide that WP was actually the builder. This issue is without merit.

### IV.  Piercing the Corporate Veil

¶15.  The Browns alternatively argue that if Waldron is not the builder, then the corporate veil should be pierced to hold Waldron personally liable.  "[T]o pierce the veil of an LLC the complaining party must prove LLC membership as well as (a) some frustration of contractual expectations, (b) flagrant disregard of LLC formalities by the LLC members, and (c) fraud or misfeasance by the LLC member." *Rest. of Hattiesburg LLC v. Hotel & Rest. Supply Inc*., 84 So. 3d 32, 39 (¶22) (Miss. Ct. App. 2012) (citing *Gray v. Edgewater Landing Inc.*, 541 So. 2d 1044, 1047 (Miss. 1989)).  "To present a jury issue on a demand that the corporate veil be pierced, a party must present some credible evidence on each of these points." *Id*.

¶16.  The courts have reserved piercing the veil of an LLC for "factual circumstances which are clearly extraordinary – where to do otherwise would 'subvert the ends of justice.'" *Gray*, 541 So. 2d at 1046 (quoting *Johnson & Higgins of Miss. Inc. v. Comm'r of Ins.*, 321 So. 2d 281, 284 (Miss. 1975)).  We do not find this case presents clearly extraordinary factual circumstances.  The Browns did not enter into a contract with Waldron or WP, nor did they present credible evidence to indicate the contrary.  Because the Browns failed to meet the first prong and are required to present credible evidence on each point, we decline to address the remaining two factors.  This issue is without merit.

### V.  Reinstatement of LLC

¶17.  The Browns argue that the reinstatement of WP does not relieve Waldron of individual liability.  And they contend Waldron reinstated for the sole purpose of evading liability. The Browns cite to several cases from other jurisdictions in support of their

argument that personal liability is not affected by the reinstatement of a corporation or LLC. The court in *Nichols-Homeshield v. Mid-American Construction Supply*, 643 P.2d 309, 310 (Okla. 1982), relied upon an Oklahoma statute that held corporate officers, directors, and trustees personally liable for debts incurred by the corporation between its suspension and reinstatement. In *Pepel's Estate v. Industrial Metals Inc.*, 450 N.E.2d 1244, 1246 (Ill. App. Ct. 1983), the court relied upon an Illinois statute in holding that "the reinstatement of a dissolved corporation does not 'relate back' to the time of dissolution so as to absolve the officers of personal liability for debts incurred by them during the period of dissolution." And in *McClean Bank v. Nelson*, 350 S.E.2d 651, 656 (Va. 1986), the court held that the applicable Virginia statute did not relieve directors, officers, or agents of personal liability that otherwise arose during the period of dissolution.

¶18. However, these cases are distinguishable. Mississippi Code Annotated section 79-29-825(3) (Rev. 2013) states:

> (3) When the reinstatement is effective:
>
> (a) The reinstatement relates back to and takes effect as of the effective date of the administrative dissolution;
>
> (b) *Any liability incurred by the limited liability company or a member after the administrative dissolution and before the reinstatement shall be determined as if the administrative dissolution had never occurred*; and
>
> (c) The limited liability company may resume carrying on its business as if the administrative dissolution had never occurred.

(Emphasis added). WP was administratively dissolved in 2009 by the Secretary of State for failure to file an annual report. Waldron reinstated WP on July 31, 2012, by filing an annual

9

report. This did occur after the Browns filed their complaint against Waldron. But the statute is clear that the reinstatement relates back to the date of dissolution and any liability during this period is determined as if the dissolution never occurred. This issue is without merit.

## VI.    Constitutionality of Statute

¶19.    The Browns claim that section 79-29-825 is unconstitutional because the statute has no legitimate purpose, it impairs the NHWA, and it interferes with contractual rights. The Browns did generally raise this issue before the trial court. However, parties challenging the constitutionality of a statute must notify the Attorney General under Mississippi Rule of Civil Procedure 24(d) and, if the constitutional challenge is raised in the Court of Appeals, serve a copy of their appellate brief on the Attorney General or appropriate governmental body. *See* M.R.A.P. 44(a). The Browns did neither; thus, their challenge is barred. *Oktibbeha Cty. Hosp. v. Miss. State Dep't of Health*, 956 So. 2d 207, 211 (¶16) (Miss. 2007).

¶20.    **THE JUDGMENT OF THE LAMAR COUNTY CIRCUIT COURT IS AFFIRMED.    ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND WILSON, JJ., CONCUR. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., NOT PARTICIPATING.**