# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01715-COA

JONATHAN LANCASTER AND CASSIE BICKHAM          APPELLANTS

v.

ANDREA MILLER AND JAN MACKO          APPELLEES

DATE OF JUDGMENT:            10/17/2019
TRIAL JUDGE:                 HON. CLAIBORNE McDONALD
COURT FROM WHICH APPEALED:   LAMAR COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANTS:     DANIEL MYERS WAIDE
ATTORNEYS FOR APPELLEES:     PATRICK H. ZACHARY
                             VICKI R. LEGGETT
NATURE OF THE CASE:          CIVIL - TORTS-OTHER THAN PERSONAL
                             INJURY AND PROPERTY DAMAGE
DISPOSITION:                 REVERSED AND REMANDED - 02/23/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.

### McDONALD, J., FOR THE COURT:

¶1.     Jan Macko and Andrea Miller sold Jonathan Lancaster and Cassie Bickham a house

that was titled in the name of Macko's limited liability company, Magnolia Properties and

Remodel LLC (Magnolia LLC).  After moving into the house, Lancaster and Bickham

discovered problems with the plumbing, electrical, and roofing conditions.  Lancaster and

Bickham filed suit for fraud and breach of contract against Magnolia LLC, ICOM LLC, and

Miller and Macko individually in the Lamar County Circuit Court.  Miller and Macko filed

for summary judgment, claiming that they were protected from individual liability by virtue

of their membership in the limited liability company.  The circuit court granted them

summary judgment, holding that Lancaster and Bickham failed to present proof of the elements needed to pierce the corporate veil and because there was no genuine issue of material fact regarding Miller's and Macko's individual liability.

¶2. Although the parties briefed several issues, after oral argument, there remains only one issue on appeal: whether Miller's and Macko's personal involvement made them each individually liable for the damages. Therefore, the matter amounts to only a misrepresentation case. Finding that the circuit court erred in holding that there was no genuine issue of material fact regarding Miller's and Macko's individual liability, we reverse the court's ruling and remand the case for further proceedings.

**Statement of the Facts and Procedural History**

¶3. Macko formed Magnolia LLC on April 26, 2016, and served as the manager and a member of the company. Her daughter, Miller, was a member of the LLC. The LLC had an operating agreement and its own bank account. On May 25, 2016, Macko and Miller purchased a house located at 206 Lamar Avenue, Hattiesburg, Mississippi, from James Michael Pickett and Kathy Diane Pickett. The title to the home was in the name of the LLC. When selling the house, James advised Miller and Macko that they should replace the roof. According to Pickett, although the roof had been replaced only ten years prior to Magnolia LLC's purchase, it had started leaking again. James also advised Miller and Macko that they should replace the plumbing in the kitchen and utility room because of water leaks.

¶4. Miller and Macko remodeled the Lamar Avenue house between May 2016 through

October 2016, but they replaced only certain parts of the roof, some plumbing items, and some electrical sockets. To finance the renovations, Macko obtained two loans in the name of the LLC for $114,561 and $12,000. Macko and Miller contributed $15,924 of their personal money to purchase and renovate the house.

¶5.     On October 12, 2016, Miller used her personal Facebook account to advertise the Lamar Avenue house for the sale price of $149,900. In the Facebook post, Miller said the house was a "totally renovated home for sale by owner." Miller also posted that she was "[n]ot sure of exact year built. It has all new wiring, roof, etc."

¶6.     Lancaster and Bickham were looking to purchase a house when they came across Miller's Facebook post. They contacted Miller to view the house. Following the tour, in November 2016, Lancaster and Bickham made an offer to buy the house based upon the representations made personally by Miller and Macko. During the negotiations to purchase the property, Lancaster and Bickham claimed that Miller and Macko represented that the entire house had been renovated and that renovations to the house were covered by warranties. The alleged renovations included new plumbing, a new electrical system, and a new roof.

¶7.     On November 4, 2016, Bickham and Lancaster signed a purchase contract,[1] which only had Miller and Macko listed as the sellers. On that same date, Bickham and Lancaster also signed a "Property Condition Disclosure Statement" that Miller and Macko also signed

_____

[1] Lancaster and Bickham purchased the house for $148,000.

3

as the sellers.  "Magnolia Properties" was listed at the beginning of the disclosure.  The disclosure statement stated that the house had been totally renovated.  In exchange, Lancaster gave Macko and Miller a check for $500 as earnest money on the purchase that same day.  The check was made payable to "Magnolia Properties."

¶8.    Lancaster and Bickham hired ICOM LLC to prepare an independent (although limited) inspection[2] of the house on December 1, 2016.  ICOM indicated that for the items it inspected, the house was in good condition.  On February 2, 2017, Lancaster and Bickham signed closing documents, which listed Magnolia LLC as the owner.  That same day, the home was conveyed to Lancaster and Bickham from Magnolia LLC by a deed signed by "Macko/Manager/Member" and "Miller/Member."

¶9.    Shortly after purchasing the house, Lancaster and Bickham discovered severe and hazardous issues with the home, including but not limited to electrical shortages, burst water pipes, and a leaking roof.  They also claimed that they discovered that none of the renovations were covered by warranties as promised by Miller and Macko.  According to Lancaster and Bickham, they contacted the contractors who had previously worked on the house.  These contractors said that Macko and Miller fired them before they finished their work[3] because they recommended that the house needed additional work, including replacing the entire roof and replacing the entire electrical system.  Because the contractors were fired

---

[2] Pursuant to the Mississippi Home Inspector Division Standards of Practice and Code of Ethics, Rule 13.2, an inspector is not required to inspect certain places of the house.

[3] The record does not specify when the contractors were fired.

and the work was not completed, none of the renovations were covered by warranty. Lancaster and Bickham presented estimates in excess of $134,745 for repairs needed to house.

¶10.    On January 30, 2018, Lancaster and Bickham filed suit against Magnolia LLC, ICOM LLC,[4] and against Miller and Macko individually in the Lamar County Circuit Court. Specifically, Lancaster's and Bickham's claims against Miller and Macko individually included the failure to disclose known issues with the house, breach of contract, negligent misrepresentation, intentional and/or fraudulent misrepresentation, negligent infliction of emotional distress, and breach of the duty of good faith. Lancaster and Bickham argued that they were not aware that an LLC owned the house until they closed on the property. Lancaster and Bickham requested a jury trial and judgment against all the listed defendants for actual, compensatory, pecuniary, special, and punitive damages, specific performance, and rescission of the contract.

¶11.    Magnolia LLC answered the complaint admitting that some representations of the condition of the house were made by the member, Miller, and manager and member, Macko. Magnolia LLC denied any claims that representations were made that the "whole house" had new plumbing, new wiring, and that a new roof had been installed. According to Magnolia LLC, only certain plumbing and electrical sockets were repaired and replaced as well as

---

[4] The circuit court granted ICOM LLC summary judgment, finding that no conduct attributed to ICOM LLC fell below the standard of care and no genuine issue of material fact was in dispute.

certain portions of the roof were repaired. There was a new portion of the roof, which was redone that had a five-year labor and fifteen-year manufacturer's warranty. Finally, it was admitted that the warranties for the house were promised to be transferred to Lancaster and Bickham following the closing of the house.

¶12. Instead of filing an answer to the complaint, Miller and Macko filed a motion to dismiss on April 3, 2018, arguing that Lancaster and Bickham had no claims against them individually because they were not the owners of the property. According to Miller and Macko, several documents, including the contract of sale, closing documents, and the closing affidavit, clearly stated that they were acting only as manager and members of Magnolia LLC. Further, the warranty deed showed Magnolia LLC as the seller of the property. Therefore, Miller and Macko requested that the circuit court dismiss Lancaster's and Bickham's claims against them or grant them summary judgment because no genuine material fact existed. On August 2, 2019, Miller and Macko filed a brief in support of summary judgment, stating that they did not have individual interests in the property and that Lancaster and Bickham had no proof that supported any claim against them individually outside of their actions on behalf of the LLC.

¶13. Lancaster and Bickham filed their response in opposition to the motion for summary judgment on August 13, 2019. They claimed that "at the very least a genuine issue of material fact exist[ed] regarding the fraudulent intent of [Macko and Miller] in failing to disclose numerous known issues with the home." They also claimed that there was no viable

6

warranty for the roof or any other renovation in the house as Macko and Milled had represented. Lancaster and Bickham argued that they were wholly unaware of the LLC and the original purchase contract did not list the LLC as owner of the property. Significantly, they argue that they would not have bought the house, but for Miller's and Macko's misrepresentations and fraud.

¶14. Lancaster and Bickham filed a supplemental response in opposition to the motion for summary judgment on August 17, 2019. They argued that they were not seeking to hold Miller and Macko individually liable because they were members of an LLC, but because they each individually committed torts.

¶15. On October 14, 2019, the circuit court granted summary judgment for Miller and Macko pursuant to the protection provided for members of LLCs by Mississippi Code Annotated section 79-29-311 (Rev. 2011). The circuit court first took judicial notice that "while a limited liability company is a legal entity within the State of Mississippi, it is not a living, breathing person and therefore can only act through its members/manager." The circuit court found that Lancaster and Bickham failed to provide credible proof to support each of the *Gray* elements needed to pierce the corporate veil.[5] Specifically, the circuit court

---

[5] To pierce the corporate veil, the individual(s) must show: "(a) some frustration of contractual expectations regarding the party to whom he looked for performance; (b) the flagrant disregard of corporate formalities by the defendant corporation and its principals; [and] (c) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder." *Gray v. Edgewater Landing Inc.*, 541 So. 2d 1044, 1047 (Miss. 1989).

found that Miller and Macko did not agree to accept any individual liability on behalf of the limited liability company by agreement or through the operating agreement. Further, the court stated that while there were vague allegations of fraud, such allegations must be pleaded with specificity and the proof must clearly show intent to defraud on the part of the actor, and Lancaster and Bickham presented no such proof. Therefore, the circuit court held that Miller and Macko were protected under the LLC and not individually liable pursuant to the statute. On October 17, 2019, the court entered the final judgment, certifying that Miller and Macko were dismissed from the matter with prejudice. Pursuant to Mississippi Rule of Civil Procedure 54(b), the circuit court found that there was no just reason for delay, and the final order was appealable pursuant to the Mississippi Rules of Appellant Procedure.

¶16. Lancaster and Bickham appealed to this court on November 15, 2019, raising the following issues: (1) whether Miller and Macko waived their arguments regarding the LLC "corporate shield" based upon the failure to raise and pursue the defense in a timely manner; (2) whether a reasonable jury could have found that Miller and Macko are individually liable for fraud; (3) whether Mississippi Code Annotated section 89-1-501 (Rev. 2011) required Miller and Macko to make disclosures in good faith; (4) whether Miller's and Macko's intent was a jury question based upon the facts and circumstances; and (5) whether Miller's and Macko's personal involvement made them each individually liable for the damages.

¶17. At oral argument, Lancaster and Bickham withdrew any argument that they had submitted sufficient proof to pierce the corporate veil, which now makes this case solely a

8

misrepresentation matter: whether the circuit court erred in granting summary judgment on the issue of Miller's and Macko's personal liability apart from the LLC. On that issue, we find that the circuit court erred in granting Miller and Macko summary judgment.

**Standard of Review**

¶18. We review a grant of summary judgment de novo, applying the same standard as the circuit court. *Rest. of Hattiesburg LLC v. Hotel & Rest. Supply Inc.*, 84 So. 3d 32, 38 (¶17). (Miss. Ct. App. 2012) (citing *Harrison v. Chandler-Sampson Ins. Inc.*, 891 So. 2d 224, 228 (¶11) (Miss. 2005)). We view the evidence in the light most favorable to the party against whom the motion has been made. *Id*. "If any triable issues of fact exist, we must reverse." *Id*. "Summary judgment is not a substitute for the trial of disputed fact issues." M.R.C.P. 56 cmt. The purpose of summary judgment is to determine whether a triable issue exists but not to resolve that issue. *Id*.

**Discussion**

¶19. The circuit court found that there was "no genuine issue of material fact regarding any individual liability on [Miller and Macko] and since they acted only on behalf of the limited liability company, a legal entity under Mississippi law, they shall be protected by the statute." "The statute" referred to is a section of the Mississippi Limited Liability Act, Miss. Code Ann. § 79-29-311 (Rev. 2011). After reviewing the record, we disagree.

¶20. "Mississippi follows the general rule that individual liability of corporate officers or directors may not be predicated merely on their connection to the corporation but must have

9

as their foundation individual wrongdoing." *Aldridge v. Aldridge*, 168 So. 3d 1127, 1140 (¶47) (Miss. Ct. App. 2014). In *Mississippi Printing Co. v. Maris, West & Baker Inc.*, 492 So. 2d 977 (Miss. 1986), the Mississippi Supreme Court found that "the general rule is well established that when a corporate officer directly participates in or authorizes the commission of a tort, even on behalf of the corporation, he may be held personally liable." *Id*. at 978 (citing *First Mobile Home Corp. v. Little*, 298 So. 2d 676 (Miss. 1974)).

¶21. The statute discussing the protection of LLC members from suit makes this same distinction. Mississippi Code Annotated section 79-29-311(1) states:

> (1) Except as otherwise provided by this chapter, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member, manager or officer of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company *solely by reason of being a member, acting as a manager or acting as an officer of the limited liability company.*

(Emphasis added).

¶22. The law is clear: in a limited liability company, no member, manager or officer such as Macko and Miller shall be obligated for a debt **solely** by reason of being a member, acting as a manager or acting as an officer of the limited liability company. But Miller and Macko can be liable for their own individual tortious actions, including fraud.

¶23. With respect to Macko's and Miller's individual liability, the circuit court found that Lancaster and Bickham made only vague allegations of fraud and did not plead fraud with

specificity as required under Rule 9 of the Mississippi Rules of Civil Procedure.[6] We disagree. Lancaster and Bickham pled several claims against Miller and Macko **individually**, including the failure to disclose, negligent misrepresentation, intentional and/or fraudulent misrepresentation. Specifically, Lancaster and Bickham asserted the following in their complaint: (1) that Miller and Macko represented that the entire house had been renovated, including new plumbing, electrical, and a new roof but only partial, cosmetic renovations were made; (2) that Miller and Macko represented that the renovations to the home were covered by warranties, which it was not; (3) that Miller and Macko represented that the "new roof" had a 15-year warranty; and (4) Miller and Macko failed to disclose known issues with the property pursuant to the property condition disclosure statement and under state law. These specific pleadings clearly met the requirements of Rule 9. "[F]raud will not be inferred or presumed and may not be charged in general terms. The circumstances of the alleged fraud such as the time, place and contents of any false representations or conduct must be stated." *Dorman v. Power*, 203 So. 3d 33, 37 (¶16) (Miss. Ct. App. 2016) (quoting *EDW Invs. LLC v. Barnett*, 149 So. 3d 489, 493 (¶9) (Miss. 2014)). Here, Lancaster and Bickham pled specific facts of misrepresentation by Miller and Macko as well as the time and place these representations were made. Therefore, they adequately pled fraud and misrepresentation claims.

---

[6] "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." M.R.C.P. 9(b).

11

¶24. The circuit court then proceeded to find that Lancaster and Bickham had failed to present any proof of Macko's and Miller's intent to defraud. Again, we disagree. A party that is claiming fraud must prove the following elements by clear and convincing evidence:

> 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity or ignorance of its truth; 5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of its falsity; 7) his reliance on its truth; 8) his right to rely thereon; and 9) his consequent and proximate injury.

*Alston v. Miss. Dep't of Emp. Sec.*, 300 So. 3d 543, 548 (¶10) (Miss. Ct. App. 2020) (citing *Moran v. Fairley*, 919 So. 2d 969, 975 (¶23) (Miss. Ct. App. 2005)). To show negligent misrepresentation, the following elements must be proved by the preponderance of the evidence:

> (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance.

*Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 743 (¶73) (Miss. 2019) (quoting *Horace Mann Life Ins. Co. v. Nunaley*, 960 So. 2d 455, 461 (¶20) (Miss. 2007)).

¶25. In this case, Lancaster and Bickham presented sufficient evidence in the record to create several genuine issues of material fact with respect to Macko's and Miller's individual liability for misrepresentation or fraud. This evidence includes the following:

### A. Miller's Facebook Post

¶26. Although Miller knew Magnolia LLC owned the Lamar Avenue property, Miller

advertised the house as her own through her personal Facebook account. Magnolia LLC was not listed as the owner of the house on any Facebook posts. Further, Miller represented in her post that the house was "[t]otally renovated house for sale by owner" and that the house "has all new wiring, roof, etc." Lancaster and Bickham presented Pickett's testimony to show Miller's knowledge that her representation was not true.

### B. Original Purchase Contract

¶27. The contract for sale and purchase of real estate, dated November 4, 2016, did not list Magnolia LLC as the seller of the house. Only Miller's and Macko's names were listed as the sellers. This evidence created a genuine issue of a material fact as to Miller's and Macko's intent to misrepresent when they clearly knew that the LLC legally owned the house.

### C. Property Condition Disclosure Statement

¶28. The disclosure, dated November 4, 2016, provided that not only was there no rot or water damage to the structure, but the "house [had] been totally renovated." Additionally, there were no material defects regarding the roof and the roof was less than five years old. Only Miller and Macko signed the disclosure as the sellers when they knew the falsity of these representations.

### D. Affidavits

¶29. Lancaster and Bickham stated in their affidavits that they were "wholly unaware of any other party being involved with the sale of the house [because] [t]he original purchase

13

contract did not list [an] LLC as an owner of the property." Both Miller and Macko stated in their affidavits that they were only acting as members and manager of Magnolia LLC in all actions regarding the Lamar Avenue property, thus creating a factual dispute for a jury to resolve as to whether Macko and Miller were acting individually or solely on behalf of the LLC.

¶30. "Issues of fact sufficient to require a denial of a motion for summary judgment are obviously present where one party swears to one version of the matter in issue and another says the opposite." *Clinton Healthcare LLC v. Atkinson*, 294 So. 3d 66, 70 (¶8) (Miss. 2019) (quoting *Miller v. Meeks*, 762 So. 2d 302, 304 (¶3) (Miss. 2000)). In examining Miller's and Macko's motion for summary judgment, all evidence must be viewed in the light most favorable to Lancaster and Bickham, the non-moving party. "When doubt is present about whether any genuine issues of material fact exist, the trial court should deny the motion for summary judgment and permit a full trial." *Id*. at (¶12).

¶31. The dissent asserts that there is no proof in the record of Miller and Macko's intent to defraud Lancaster and Bickham. But rarely is there direct evidence of fraud because rarely does a defendant admit to intentional misrepresentations. However, the dissent agrees that this Court has held that "[a] party opposing summary judgment is entitled to all reasonable inferences from the evidence." *Mayer v. Angus*, 83 So. 3d 444, 449 (¶12) (Miss. Ct. App. 2012) (quoting *Rhaly v. Waste Mgmt. of Miss. Inc.*, 43 So.3d 509, 516 (¶22) (Miss. Ct. App. 2010)). Even though the burden of proof of fraud is high (clear and convincing evidence),

14

in criminal cases with a higher burden of proof, intent may be inferred from a defendant's acts and conduct. *Thomas v. State*, 277 So. 3d 532, 533 (¶3) (Miss. 2019).

¶32.    In this case, Lancaster and Bickham presented evidence of Macko's and Miller's acts from which a jury could legitimately infer their intent to defraud. This included the prior owner's testimony that he told Miller that the roof was ten years old and leaking, along with the fired contractor's testimony that the roof work was not completed juxtaposed to Miller's Facebook post in which she advertised that the entire house had been renovated, including new plumbing, electrical items, and a new roof. Moreover, Macko and Miller stated in the property-condition disclosure statement that there was no damage to the structure, that the "house [had] been totally renovated," that there were no material defects regarding the roof, and that the roof was less than five years old, all of which were representations contradicting the testimony of the former owner of the house and the fired contractors.

¶33.    Additionally, Lancaster and Bickham said that Miller and Macko told them that the roof was completely new and had a 15-year warranty. But Lancaster and Bickham later learned that there was no 15-year warranty. The dissent states that the property condition disclosure statement expressed that the roof had a "partial transferable warranty." However, the disclosure did not elaborate on the meaning of a "partial transferable warranty" nor did such a warranty ever exist. After closing on the house, Lancaster inquired about the roof's warranty, and Macko told Lancaster to call Pearson Roofing. Pearson Roofing did not provide Lancaster with a warranty but only provided a document of mere estimates between

15

the company and Macko for the roof repair. However, Lancaster and Bickham never received any warranties from Miller and Macko or Pearson Roofing.

¶34. Furthermore, the property-disclosure condition statement declares that it is "a statement of certain conditions and information concerning the property known to the seller." But in fact, there was no warranty. It also cannot be ignored that Miller and Macko knew about the material defects regarding the house's roofing and plumbing from the house's prior owner because Pickett told Miller and Macko that both the roof and the plumbing needed to be replaced. However, Miller and Macko did not remedy the defects and falsely stated on the disclosure that there were no material defects and that the house was totally renovated. Miller and Macko also failed to inform Lancaster and Bickham that the roof and plumbing needed replacing. The dissent asserts that Miller and Macko stated in their *answer* that "some plumbing items were repaired." But the potential fraud had already occurred when Miller and Macko stated this. From this evidence, a fact-finder could legitimately infer that Miller and Macko intended to defraud Lancaster and Bickham. Clearly, Lancaster and Bickham presented sufficient evidence that genuine issues of material fact existed, including evidence creating a legitimate inference of intent, such that summary judgment should have been denied.

¶35. Additionally, while the dissent contends that Lancaster and Bickham only pled vague allegations of fraud, their complaint directly asserted specific allegations pursuant to Rule 9. Lancaster and Bickham specifically pleaded in their complaint (1) that Miller and Macko

16

represented that the entire house had been renovated, including new plumbing, electrical, and a new roof but only partial renovations were made; (2) that Miller and Macko represented that the renovations to the home were covered by warranties, when it was not; (3) that Miller and Macko represented that the "new roof" had a 15-year warranty when it did not; and (4) that Miller and Macko failed to disclose known issues with the property. They also pleaded that Miller and Macko intentionally and knowingly made these misrepresentations.[7]

¶36. Furthermore, Lancaster and Bickham detrimentally relied on Miller's and Macko's misrepresentations regarding the renovations, warranties, and status of the roof and other repairs to the home. Miller's Facebook post and the property condition disclosure statement stated that the house had been totally renovated. Additionally, the original contract for the house and the disclosure only listed Miller and Macko as the sellers.

¶37. We agree with the circuit court that Lancaster and Bickham did not meet the burden of proof to pierce the corporate veil pursuant to the three-prong *Gray* test. However, during oral argument, Lancaster and Bickham withdrew their argument that they had submitted sufficient proof to pierce the corporate veil. In doing so, the sole issue before this court is

---

[7] Specifically, Lancaster and Bickham pleaded the following in their complaint:

> The individual Sellers are individually liable to Plaintiffs because the individual Sellers knew, or should have known, that the roof and the renovation work was not covered by a warranty, and yet represented to the Plaintiffs that the renovations were covered by warranties . . . . The actions and omissions of Defendants were negligent, intentional and/or done with reckless disregard towards Plaintiffs.

17

whether genuine issues of material facts exist as to Miller's and Macko's individual liability apart from the LLC. As previously stated, "when a corporate officer directly participates in or authorizes the commission of a tort, even on behalf of the corporation, he may be held personally liable." *Whitaker v. Limeco Corp.*, 32 So. 3d 429, 439 (¶31) (Miss. 2010) (quoting *Turner v. Wilson*, 620 So. 2d 545 (Miss. 1993)). Therefore, if an individual member of an LLC participates in a tort, then the individual can be sued in spite of not piercing the corporate veil. As a two-member LLC, there is clearly no one else other than Miller and Macko who could have made the fraudulent misrepresentations to Lancaster and Bickham. Through documentation and sworn testimony in the record, Lancaster and Bickham have presented sufficient evidence that genuine issues of material facts exist regarding the misrepresentation claim. Therefore, we find that the circuit court erred by granting Miller's and Macko's motion for summary judgment.

## Conclusion

¶38.   Finding that genuine issues of material facts exist as to Miller's and Macko's individual liability, we reverse the grant of summary judgment and remand the case to the circuit court for further proceedings.

¶39.   **REVERSED AND REMANDED.**

**BARNES, C.J., WESTBROOKS, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. GREENLEE, J. CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY WILSON, P.J.**

**CARLTON, P.J., DISSENTING:**

¶40. I would affirm the circuit court's decision granting summary judgment in Miller and Macko's favor, rejecting Lancaster and Bickham's attempt to hold Miller and Macko individually liable in this case. Because Lancaster and Bickham have put forth insufficient evidence to pierce the veil of a limited liability company (as they admitted in oral argument), there is insufficient evidence in this case to hold Miller and Macko individually liable. Accordingly, I respectfully dissent.

¶41. In order to hold Miller and Macko personally liable in this case, Lancaster and Bickham bear the burden of proof on their piercing the limited liability company (LLC) veil claim. As such, Miller and Macko, as the parties moving for summary judgment, "need only present some evidence showing that proof of an essential element of the nonmoving party's claim is absent." *Palmer v. Biloxi Reg'l Med. Ctr. Inc*., 564 So. 2d 1346, 1355 (Miss. 1990). Lancaster and Bickham must then "rebut [Miller and Macko's] claim (i.e., that no genuine issue of material fact exists) by producing supportive evidence of *significant* and *probative* value." *Id.* "Summary judgment is mandated where the respondent has failed 'to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Wilbourn v. Stennett Wilkinson & Ward*, 687 So. 2d 1205, 1214 (Miss. 1996) (quoting *Galloway v. Travelers Ins. Co.*, 515 So. 2d 678, 683 (Miss.1987)).

¶42. I recognize that the majority relies on the general rule observed by the Mississippi

Supreme Court in *Mississippi Printing Co. Inc. v. Maris, West & Baker Inc.*, 492 So. 2d 977, 978 (Miss. 1986), that "when a corporate officer directly participates in or authorizes the commission of a tort, even on behalf of the corporation, he may be held personally liable." I find, however, that there is insufficient evidence to overcome summary judgment in reliance on this general rule in this case. As the circuit court found, "[w]hile there have been vague allegations of fraud such allegations must be pled with specificity *and the proof must clearly show intent to defraud on the part of the actor. No such proof is present in this record and discovery is complete*." (Emphasis added). Based upon my own review of the record *as a whole*,[8] I agree that no such proof of intent to defraud is present, particularly where, as here, Lancaster and Bickham's assertions of fraudulent conduct "must ultimately be proved by clear-and-convincing evidence." *See Boyanton v. Bros. Produce Inc.*, No. 2019-CA-00269-COA, 2020 WL 5249589, at *14 (¶67) (Miss. Ct. App. Sept. 1, 2020), *pet. for cert. filed* (Dec. 15, 2020). In finding that genuine issues of material fact exist on this issue, the majority describes, for example, testimony from the prior owner that the roof leaked, and testimony from Magnolia LLC's former contractor that roof work on the home was not completed. But the fact that the roof was only *partially* replaced is plainly evident in the property-condition disclosure statement that Lancaster and Bickham received at the closing on the property. On pages three through four of that document the handwritten

---

[8] Contrary to the majority's statement that I "contend[] that Lancaster and Bickham only pled vague allegations of fraud [in their complaint]," my analysis is based upon my review of the record as a whole.

comments provide that only parts of the roof were replaced and thus there was a *partial* transferrable warranty on the roof in effect at the time of closing applicable only to those parts of the roof that were replaced.

¶43.   I find no evidence in the record that Miller and Macko did not believe this partial warranty existed.  The Pearson Roofing repair bill in the record plainly provides that it "is a legal contract," and it sets out the portion of the roof that was repaired and what portion of the roof had a warranty on workmanship and the fifteen-year manufacturer's warranty. Regarding plumbing, Miller and Macko stated in their answer to Lancaster and Bickham's complaint that "some plumbing items were repaired"; I find no evidence sufficient to overcome summary judgment that Miller and Macko believed material plumbing defects still existed at closing.  As stated, I simply find no intent to defraud on Miller and Macko's part. Indeed, as Lancaster and Bickham explicitly acknowledged when they signed the property condition disclosure statement acknowledgment, "[t]he Buyer[s] acknowledge[] receipt of a copy of this statement and buyer[s] understand[] that this information is a statement of certain conditions and information concerning the property *known to the seller*."  (Emphasis added).   The acknowledgment further provides that the property-condition disclosure statement "is not a warranty of any kind by the seller . . . and is not a substitute for any home, pest, radon or other inspections or testing of the property or inspection of the public records." As this Court recognized in *Mayer v. Angus*, 83 So. 3d 444 (Miss. Ct. App. 2012), "[a] party opposing summary judgment is entitled to all reasonable inferences from the evidence. . . .

21

However, the evidence must remove the case from the realm of conjecture and place it within the field of legitimate inference." *Id.* at 449 (¶12) (emphasis added) (citations and internal quotation mark omitted). Continuing, this Court found that "[t]his is particularly true when the inference is offered to support a claim of fraud, which must be proven by clear-and-convincing evidence." *Id.* I find that the same analysis is applicable here.

¶44. I further find that the circuit court properly analyzed this case in the context of piercing the LLC veil. In this regard, Lancaster and Bickham's burden was to show "supportive evidence of significant and probative value," *Palmer*, 564 So. 2d at 1355, of "(a) some frustration of contractual expectations,[9] (b) flagrant disregard of LLC formalities by the LLC members, and (c) fraud or misfeasance by the LLC member." *Rest. of Hattiesburg LLC v. Hotel & Rest. Supply Inc.*, 84 So. 3d 32, 38 (¶¶20-22) (Miss. Ct. App. 2012) (citing *Gray v. Edgewater Landing Inc.*, 541 So. 2d 1044, 1047 (Miss. 1989)). "To present a jury issue on a demand that the [LLC] veil be pierced, a party must present some credible evidence on each of these points." *Gray*, 541 So. 2d at 1047. Based upon the evidence before it, the circuit court found that Lancaster and Bickham failed to offer sufficient credible proof on any of these factors, as follows:

> The proof in the record clearly shows that the corporate entity was properly set up and registered, an operating agreement done, bank account opened, loans made and that it filed tax returns and therefore its members should be protected

---

[9] In *Restaurant of Hattiesburg LLC*, 84 So. 3d 32, 40 (¶25), the Court explained that the inquiry under the first *Gray* prong "focuses on whether [the plaintiff] knew it was contracting with a particular LLC, . . . rather than [its members]."

pursuant to § 79-29-311. The individual member and manager did not agree to accept any individual liability on behalf of the limited liability company by agreement or through the operating agreement. While there have been vague allegations of fraud such allegations must be pled with specificity and the proof must clearly show intent to defraud on the part of the actor. No such proof is present in this record and discovery is complete.

¶45. My own review of the record likewise reveals that Lancaster and Bickham failed to present sufficient credible evidence on the three factors required to pierce the LLC veil under *Gray*. The majority relies on certain evidence in the record that it finds creates a genuine issue of material fact with respect to Miller and Macko's individual liability for misrepresentation or fraud, including Miller's Facebook post, the property condition disclosure statement that the majority finds shows that Miller and Macko signed in their individual capacities, and the contract for sale and purchase of real estate signed by Miller and Macko. The majority also finds relevant the statements in Lancaster's and Bickham's affidavits that they were "wholly unaware of any other party [(i.e., Magnolia LLC)] being involved in the sale of the house" because Magnolia LLC was not listed as the owner on the contract for sale and purchase of real estate.

¶46. I do not find that this is sufficient credible evidence to create a jury issue on the third *Gray* factor (fraud). In *Penn Nat'l Gaming v. Ratliff*, 954 So. 2d 427, 432 (¶10) (Miss. 2007),[10] the Mississippi Supreme Court held that "the corporate veil will not be pierced, in either contract or tort claims, except where there is some abuse of the corporate form itself."

---

[10] This decision was later superseded by statute on other grounds, as recognized in *Purdue Pharma L.P. v. State*, 256 So. 3d 1, 6 (¶16) (Miss. 2018).

This same principle was recognized by this Court in *Restaurant of Hattiesburg LLC*, 84 So. 3d at 43 (¶39) (quoting *Penn National*, 954 So. 2d at 432 (¶10)) (citing *Trevino v. Merscorp Inc.*, 583 F. Supp. 2d 521, 530 (D. Del. 2008) (holding, under Delaware law, the type of fraud or injustice required under "must be found in the defendants' use of the corporate form")). *See also Powertrain Inc. v. Ma*, 88 F. Supp. 3d 679, 699 (N.D. Miss. 2015), *aff'd*, 640 F. App'x 263 (5th Cir. 2016) (unpublished) (finding *Gray* "fraud" factor not met where there was no proof offered that individual shareholder "abused the corporate form in committing any alleged fraud or misfeasance"). Under these authorities, I do not find that the evidence that the majority relies upon constitutes sufficient credible evidence of fraud in the piercing the LLC veil context. Nor do I find that this evidence is sufficient to hold Miller and Macko individually liable for any purported "direct[] participation" in fraudulent acts, as the majority finds above.

¶47. Further, even if the evidence relied upon by the majority were sufficient to overcome summary judgment as to the third *Gray* factor (fraud), I do not find that Lancaster and Bickham presented sufficient credible evidence supporting piercing the LLC veil under either of the other two the *Gray* factors ("frustration of contractual expectations" and "flagrant disregard of LLC formalities by the LLC members").

¶48. In particular, Miller's Facebook post simply says the property is "for sale by owner," and both Miller and Macko state in their affidavits that they were acting at all times in their capacity as members of the LLC. Regarding the property-condition disclosure statement

24

described in the majority's opinion, a review of this document shows that it was signed by the individual members in their membership/management capacities with the limited liability company—the LLC is listed on top of the first page. Further, I do not find that Lancaster and Bickham's purported reliance on the contract for sale and purchase of real estate that was signed by Miller and Macko without indication of their LLC membership status is sufficient credible evidence to pierce the LLC veil in this case. *Brown v. Waldron*, 186 So. 3d 955 (Miss. Ct. App. 2016), is instructive on this issue.

¶49. In *Brown*, the Browns purchased a home from Waldron Properties LLC. *Id.* at 957 (¶1). Murray Waldron was the sole member of Waldron Properties LLC. *Id.* at (¶2). The Browns subsequently sued both Waldron and the LLC for negligence and breach of home warranties. *Id.* With respect to Waldron's individual liability, the plaintiffs asserted that the LLC veil should be pierced because Waldron signed one closing document in his name (the "Notice to Home Buyer of the New Home Warranty Act" (Notice)) and not in his capacity as a member of the LLC; "he used his personal cell phone to conduct business[;] and [he] never mentioned to them that [the LLC] was the actual builder." *Id.* at 959 (¶9). The Court found this assertion without merit, simply observing that "[a]ll of the documents, save the Notice, indicate [Waldron Properties LLC] was the builder." *Id.* at 959 (¶10).

¶50. The same is true in this case. The record reflects that the check written and signed by Bickham as a deposit for the purchase of the home was made payable to Magnolia LLC; the warranty deed from Magnolia LLC was executed and delivered to Lancaster and Bickham

25

by Jan Macko (manager), and Andrea Miller (member); and the closing documents for the sale show that Magnolia LLC was the seller and that Lancaster and Bickham were the purchasers/grantees. Under these circumstances, I do not find that the contract for sale and purchase of real estate signed by Miller and Macko, coupled with Lancaster's and Bickham's assertions that they relied on this information in believing Magnolia LLC was not involved in the sale, is sufficient credible evidence supporting piercing the corporate veil. *Brown*, 186 So. 3d at 957 (¶¶9-10).

¶51. In short, courts have reserved piercing the veil of a corporation or an LLC "for factual circumstances which are clearly extraordinary—where to do otherwise would 'subvert the ends of justice.'" *Gray*, 541 So. 2d at 1046 (quoting *Johnson & Higgins of Miss. Inc. v. Comm'r of Ins.*, 321 So. 2d 281, 284 (Miss. 1975)). I do not find that this case presents the "clearly extraordinary [factual] circumstances," *id.*, necessary to pierce the LLC veil where Lancaster and Bickham failed to meet their burden in overcoming summary judgment as to at least two elements the *Gray* test. Because Lancaster and Bickham are required to present sufficient credible evidence on *each* element of the *Gray* test, I find that summary judgment in Miller and Macko's favor should be affirmed for this additional reason. *See Brown*, 186 So. 3d at 960-61 (¶¶15-16) (Miss. Ct. App. 2016) (finding no merit in plaintiffs' "piercing the LLC veil" argument seeking to hold a sole LLC member individually liable where plaintiffs failed to meet the first prong of the *Gray* test and finding it was unnecessary to address the remaining two *Gray* factors); *Rest. of Hattiesburg LLC*, 84 So. 3d at 39-40 (¶24)

(citing *Foamex v. Superior Prods. Sales Inc.*, 361 F. Supp. 2d 576, 577-78 (N.D. Miss. 2005) (granting defendant summary judgment because plaintiff, while presenting evidence on first two *Gray* factors, failed to create jury issue on third factor)).

¶52. For the reasons stated, I dissent. I would affirm the circuit court's judgment granting summary judgment in Miller and Macko's favor and dismissing all claims against them, individually.

**WILSON, P.J., JOINS THIS OPINION IN PART.**